1997 ND 174

**Dr. William LONG, Plaintiff
and Appellant,**

v.

**Willis SAMSON, Tom Norris, and
University of North Dakota,
Defendants and Appellees.**

**Civil No. 970006.**

Supreme Court of North Dakota.

Sept. 8, 1997.

Rehearing Denied Sept. 30, 1997.

William E. McKechnie, Grand Forks, for plaintiff and appellant.

Gary R. Thune (argued), and David E. Reich, Special Assistant Attorneys General, Bismarck, for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] Dr. William Long appealed from a judgment dismissing his action against the University of North Dakota (UND), Willis Samson, and Tom Norris for damages arising from Long's termination as an assistant professor of physiology at the UND School of Medicine. Holding Long's failure to exhaust his administrative remedies at UND precludes him from bringing his contract and tort claims against the defendants, we affirm.

## I

[¶ 2] In 1989, Long accepted a probationary appointment as an assistant professor of physiology at the UND School of Medicine. Long held the probationary appointment for academic years 1989–1990 through 1992–1993. In June 1993, Dean Edwin James and UND President Kendall Baker notified Long he would be issued a terminal contract for the 1993–94 academic year. They also advised Long of his due process rights under Section II–8.1.3(C) of the UND Faculty Handbook. Long requested an explanation of the reasons for the terminal contract, and President Baker informed Long of the reasons which had contributed to the decision. Long then asked President Baker to reconsider the decision. President Baker subsequently advised Long the decision had been reconsidered and upheld.

[¶ 3] Long did not pursue any further administrative remedies at UND under Section II–8.1.3(C) of the UND Faculty Handbook.[1]

---

1. Section II–8.1.3(C) says, in part:
   "C. NONRENEWAL OF APPOINTMENT OF PROBATIONARY FACULTY
   "3. If within sixty calendar days after receipt of notice of nonrenewal, the faculty member alleges that the nonrenewal decision was based on inadequate consideration, a Special Review Committee shall review the faculty member's allegations and determine whether the decision was the result of in-

adequate consideration in terms of relevant standards of the institution. The term 'inadequate consideration' shall be interpreted to refer to procedural rather than substantive issues and shall not mean that the Special Review Committee should substitute its own judgment on the merits of whether the faculty member should be reappointed or given tenure. If the Special Review Committee believes that adequate

Instead, he sued UND, Samson, the chairman of the physiology department, and Norris, the executive assistant dean at the UND School of Medicine, alleging: (1) breach of contract; (2) defamation; (3) violation of the Age Discrimination Act; (4) violation of the North Dakota Human Rights Act; (5) intentional infliction of emotional distress; and (6) intentional interference with a business relationship. The defendants moved to dismiss Long's complaint under N.D.R.Civ.P. 12(b)(i) and 56(c), contending his failure to exhaust administrative remedies required dismissal of his lawsuit.

[¶ 4] The district court dismissed Long's action under N.D.R.Civ.P. 12(b)(i), ruling his failure to exhaust administrative remedies precluded the court from exercising jurisdiction under *Thompson v. Peterson et al.*, 546 N.W.2d 856 (N.D.1996) and *Soentgen v. Quain & Ramstad Clinic, P.C.*, 467 N.W.2d 73 (N.D.1991).

[¶ 5] The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). We have jurisdiction under N.D. Const. Art. VI, §§ 2, 6, and N.D.C.C. § 28–27–01.

## II

[¶ 6] Long contends the district court erred in dismissing his contract and tort claims. He argues the court's decision deprived him of due process because his administrative remedies at UND authorized consideration of only procedural issues and were inadequate to resolve his substantive claims. He argues *Thompson* is not controlling because it involved claims for injunctive relief, and he sought damages for tort and breach of contract.

### A

[¶ 7] *Thompson* involved the nonrenewal of a probationary professor at North Dakota State University (NDSU) under nonrenewal procedures which Long concedes were the "exact same procedures" governing probationary professors at UND. *Compare* n. 1 *with Thompson* at 861–62 n. 4. Thompson sought damages and injunctive relief for breach of contract, violation of constitutional rights, and violation of the secret personnel file provisions of N.D.C.C. ch. 15–38.2. The trial court dismissed Thompson's action for lack of jurisdiction under N.D.R.Civ.P. 12(b)(i) because he failed to exhaust his internal administrative remedies at NDSU.

[¶ 8] We affirmed the judgment dismissing Thompson's action. *Thompson* at 864. We said Thompson's employment agreement with NDSU was specifically governed by the NDSU University Senate Policy Implementing Procedural Regulations and by the State Board of Higher Education Regulations, and

consideration was not given, it shall request reconsideration, indicating the respects in which it believes the consideration may have been inadequate. It shall provide copies of its report to the faculty member, the recommending body or individual, the president, and other appropriate administrative officers. Allegations involving the adequacy of consideration shall not be subject to further review by the Standing Committee on Faculty Rights or the Board. [No implementation required]
"4. If a faculty member on probationary or special appointment alleges, within sixty calendar days after receipt of notice of nonrenewal, that the nonrenewal decision was based significantly on considerations violative of (a) academic freedom, (b) rights guaranteed by the United States Constitution, or (c) rights previously conferred by written agreement, the allegation shall be given preliminary consideration by a Special Review Committee, which shall seek to settle the matter by informal methods. The

allegation shall be accompanied by a statement that the faculty member agrees to the presentation, for the consideration of the faculty committees, of such reasons and evidence as the institution may allege in support of this decision. If the allegation is unresolved at this stage, and if the Special Review Committee so recommends, the matter shall be heard by the Standing Committee on Faculty Rights in accordance with the procedures in section J, except that the faculty member making the complaint shall be responsible for stating the grounds upon which it is based and must prove by clear and convincing evidence that the nonrenewal was based significantly on the alleged improper consideration. If the faculty member succeeds in establishing a prima facie case before the Standing Committee on Faculty Rights, it shall be incumbent upon those who made the nonrenewal decision to come forward with evidence in support of their decision. [No implementation required]"

we held Thompson's premature request for reasons for nonrenewal, which was not directed to the NDSU President, did not substantially comply with those administrative nonrenewal procedures. *Thompson* at 863. We held the doctrine of exhaustion of administrative remedies applied to Thompson's constitutional claims because NDSU's administrative regulations contemplated consideration of those claims. *Thompson* at 863. We also said Thompson, a nontenured probationary professor, possessed no constitutionally protected property interest in continued employment. *Thompson* at 863.

[¶ 9] In *Thompson* at 861, we cited *Soentgen* for the application of the doctrine of exhaustion of administrative remedies to employment cases. In *Soentgen,* a doctor failed to exhaust her administrative remedies at a hospital and, instead, sued the hospital for wrongful discharge. We affirmed the summary judgment dismissal of the doctor's wrongful discharge claim because she failed to exhaust the hospital's administrative remedies. *Soentgen* at 83. We applied the general rule requiring a physician to exhaust available internal remedies before suing a hospital for damages arising from the physician's exclusion or expulsion. *Soentgen* at 82. *See Eidelson v. Archer,* 645 P.2d 171, 179 (Alaska 1982) (applying exhaustion of administrative remedies to tort action for termination of doctor's hospital privileges); *Westlake Community Hosp. v. Superior Court of Los Angeles Cty.,* 17 Cal.3d 465, 131 Cal.Rptr. 90, 551 P.2d 410, 416 (1976) (applying exhaustion of remedies to tort action for termination of doctor's hospital privileges); *Garrow v. Elizabeth Gen. Hosp. and Dispensary,* 79 N.J. 549, 401 A.2d 533, 538–39 (1979) (applying exhaustion of remedies to proceedings against non-profit private hospital relating to qualifications of medical staff). In *Soentgen* at 82, we quoted the following pertinent rationale from *Westlake* at 416, for requiring a party to exhaust available administrative remedies before suing for damages:

"[E]ven if a plaintiff no longer wishes to be either reinstated or admitted to the organization, an exhaustion of remedies requirement serves the salutary function of eliminating or mitigating damages. If an organization is given the opportunity quickly to determine through the operation of its internal procedures that it has committed error, it may be able to minimize, and sometimes eliminate, any monetary injury to the plaintiff by immediately reversing its initial decision and affording the aggrieved party all membership rights; an individual should not be permitted to increase damages by foregoing available internal remedies. . . .

"Moreover, by insisting upon exhaustion even in these circumstances, courts accord recognition to the 'expertise' of the organization's quasi-judicial tribunal, permitting it to adjudicate the merits of the plaintiff's claim in the first instance. . . . Finally, even if the absence of an internal damage remedy makes ultimate resort to the courts inevitable . . . the prior administrative proceeding will still promote judicial efficiency by unearthing the relevant evidence and by providing a record which the court may review."

■ [¶ 10] There is a split of authority on whether the exhaustion doctrine applies to a discharged employee's tort or contract claims. *See* 1 Silver, *Public Employee Discharge and Discipline* § 9.15 (1995). Some courts have not required a discharged employee to exhaust administrative remedies as a prerequisite to bringing contract or tort claims. *Pounds v. Denison,* 115 Idaho 381, 766 P.2d 1262 (1988); *Rambo v. Cohen,* 587 N.E.2d 140 (Ind.App.1992). Our decisions in *Thompson* and *Soentgen,* however, have required a discharged employee to exhaust administrative remedies before seeking damages for contract claims. The rationale for requiring a party to exhaust available administrative remedies before suing for damages equally applies to tort and contract claims arising out of the nonrenewal of an employment relationship. The exhaustion requirement serves the same purposes of eliminating or mitigating damages, recognizing the expertise of the organization's quasi-judicial tribunal, and promoting judicial efficiency for tort claims arising out of the termination of an employment relationship. *See Westlake* at 416; *Soentgen* at 82.

[¶ 11] Here, Long's complaint alleges contractual and tort claims arising from UND's tenure review process and the nonrenewal of his employment relationship, and he has cited no evidence showing his claims involve facts outside the tenure review process and the nonrenewal of his employment relationship. *See Thompson* at 861 (in deciding jurisdictional issue, trial court may consider matters outside pleadings without converting proceedings to summary judgment). We conclude the exhaustion of remedies doctrine applies to the contract and tort claims raised by Long.

### B

[¶ 12] Long argues exhaustion of his administrative remedies would be futile and those remedies were inadequate because UND could not decide substantive issues, or award the damages he sought. Long's argument is premised on a misreading of UND's administrative procedures.

[¶ 13] Section II–8.1.3(C)(3) authorizes review of decisions based upon "inadequate consideration," which, by definition, is confined to procedural and not substantive issues. *See* n. 1. Section II–8.1.3(C)(4), however, authorizes substantive review of academic freedoms, constitutional rights, or contractual rights. *See* n. 1. A remedy is not inadequate simply because it may not result in the exact relief requested. *See Riley v. Boxa*, 542 N.W.2d 519, 521–23 (Iowa 1996). Administrative resolution of Long's nonrenewal may have eliminated or mitigated damages and developed a record to sharpen

issues and avoid judicial proceedings. *See Soentgen* at 82; *Westlake* at 416. As in *Thompson* at 863, we decline to speculate on the validity of Long's claims if they had been raised in the designated administrative forum. We reject Long's argument that resort to UND's administrative procedures would have been futile, or the remedies at UND would have been inadequate.

[¶ 14] Contrary to Long's argument, he was not denied due process and an opportunity to have his contract and tort claims decided on the merits. Instead, he is precluded from suing on those claims because he failed to exhaust his available remedies at UND before bringing those claims. We hold Long's failure to exhaust the administrative remedies at UND precludes him from now raising those claims.

### III

[¶ 15] We hold the trial court did not err in dismissing Long's contract and tort claims under N.D.R.Civ.P. 12(b)(i),[2] and we affirm the judgment dismissing his complaint.

[¶ 16] VANDE WALLE, C.J., and NEUMANN, MARING and MESCHKE, JJ., concur.

**2.** Long's complaint also alleged a violation of the Age Discrimination Act and the North Dakota Human Rights Act. On appeal, Long has not raised any issues regarding those claims.