1998 ND 149

**Fathy S. MESSIHA, Plaintiff and Appellant,**

v.

**STATE of North Dakota, d/b/a University of North Dakota, and its officers and servants, Clayton Jensen, Thomas Clifford, Kendall Baker, and Sally Page, Defendants and Appellees.**

Civil No. 980007.

Supreme Court of North Dakota.

Aug. 18, 1998.

Rehearing Denied Sept. 15, 1998.

Bruce A. Schoenwald, Fargo, for plaintiff and appellant.

Gary R. Thune (argued), and David E. Reich (no appearance), Special Assistant Attorneys General, Bismarck, and Julie Erjavec (appearance), General Counsel, UND School of Law, Grand Forks, for defendants and appellees.

MESCHKE, Justice.

[¶ 1] Fathy Messiha appealed a summary judgment dismissing his action for wrongful termination and other claims against the State, acting through the University of North Dakota, and its officers and servants, Thomas Clifford, Kendall Baker, Clayton Jensen, and Sally Page.[1] We hold the trial court did not abuse its discretion in denying Messiha's motion to amend his complaint, and Messiha failed to demonstrate any material factual disputes about his other claims. We therefore affirm the summary judgment.

[¶ 2] The UND School of Medicine hired Messiha as a tenured professor and chair of the Department of Pharmacology in April 1987. After some internal conflicts in the department, Messiha was relieved of his duties as department chair in September 1988, but remained as a tenured professor. Messiha thereafter filed several grievances about his employment with UND, and in 1993 UND President Baker appointed an Administrative Review Team to consider Messiha's "formal disagreements" with UND. After a two-day review in May 1993,

---

1. Clifford and Baker each served as UND's president during this action, and Jensen was interim dean of the UND School of Medicine. Although Messiha's complaint did not describe Page's office, she was identified in the record as an affirmative action officer at UND. Messiha's complaint alleged claims against the UND officers in their official capacities.

the Administrative Review Team concluded "Messiha's presence within the Department of Pharmacology and Toxicology cannot continue," and recommended "decisive action be taken regarding Professor Messiha's position as a faculty member."

[¶ 3] In June 1993, UND President Baker notified Messiha that UND intended to terminate his employment as a tenured professor for cause, because his conduct "substantially impaired the fulfillment of [his] institutional responsibilities and substantially obstructed and disrupted departmental, college, and university activities." Baker notified Messiha the dismissal would be effective July 1, 1993, unless Messiha exercised his appeal rights under the UND Faculty Handbook.

[¶ 4] Messiha appealed to a Special Review Committee that concluded the proceedings for dismissal of Messiha were "appropriate, timely, and in accord with university policies and practices." Messiha then appealed to a Standing Committee on Faculty Rights (SCOFR). After a formal hearing, the SCOFR found clear and convincing evidence that Messiha had intentionally and substantially disrupted teaching activities at UND and had interfered with his colleagues' rights of free inquiry and expression of opinions. In April 1994, the SCOFR recommended that Messiha be terminated as a tenured professor.

[¶ 5] Baker accepted the SCOFR recommendation and reaffirmed his June 1993 decision to terminate Messiha's employment. Messiha then appealed to the North Dakota State Board of Higher Education. After review by an administrative hearing officer who recommended affirming UND's action, the Board of Higher Education upheld Messiha's termination in September 1995.

[¶ 6] Meanwhile, in September 1994, Messiha sued the State, acting through UND, and Baker, Clifford, Jensen, and Page, alleging breach of contract, deprivation of property without due process, and defamation. In April 1997, Messiha moved to amend his complaint to allege claims for breach of tenure against UND, tortious interference with contract against Joseph Miceli and the Morehouse School of Medicine, civil conspiracy

against UND and Miceli, and a personnel file violation against UND. The trial court allowed Messiha to amend his complaint to add the breach-of-tenure claim to clarify that his breach-of-contract claim also covered the termination of his employment, but the court denied his request to add other claims to the complaint. The court then granted summary judgment dismissing Messiha's complaint, and he appealed.

## I

[¶ 7] Messiha contends the trial court abused its discretion in denying his motion to amend his complaint. After a responsive pleading is served, N.D.R.Civ.P. 15(a) allows amendment of pleadings "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." A trial court has discretion to grant or deny amendments to pleadings under N.D.R.Civ.P. 15(a), and we will not reverse the court's decision absent an abuse of discretion. *Isaac v. State Farm Mut. Auto. Ins. Co.*, 547 N.W.2d 548, 551 (N.D.1996). As we explained in *Hansen v. First Am. Bank & Trust*, 452 N.W.2d 770, 772 (N.D.1990), a trial court abuses its discretion when it acts arbitrarily, unconscionably, or unreasonably.

[¶ 8] Messiha served his initial complaint in September 1994, and he moved to amend it in April 1997. During part of that time, Messiha exercised his internal administrative rights at UND, culminating with the State Board of Higher Education's decision to uphold his termination in September 1995. However, Messiha waited until April 1997 before seeking to amend his complaint. The trial court concluded Messiha had shown no reason for the long delay, and decided the delay was not justified and may not have been in the interests of justice. The court, however, observed UND had not claimed prejudice and, except for the breach-of-tenure claim, denied Messiah's motion to amend, concluding the evidence did not support his other claims.

## A

[¶ 9] Messiha's claim for tortious interference with contract against Miceli and

the Morehouse School of Medicine alleged that Miceli, a professor at Morehouse, sent the Administrative Review Team an unsolicited letter of support for Messiha's successor as chair of the Department of Pharmacology, Dr. David Hein. Messiha argues Miceli's letter was obviously intended to facilitate Messiha's termination. The trial court ruled:

> Based upon the record, there were numerous grievances filed by and against [Messiha] long before the letter of Dr. Miceli reached the Administrative Review Team. Furthermore, the decision to terminate [Messiha] was based upon those numerous episodes. *See* Findings of the Administrative Hearing Officer. There is no evidence at all which would tend to show that Dr. Miceli's letter in any way influenced the decision of the Team nor of any of the Defendants.

■ [¶ 10] To establish a facial case for tortious interference with contract, a claimant must show a breach of contract instigated without justification by the defendant. *Hennum v. City of Medina*, 402 N.W.2d 327, 336 (N.D.1987). Miceli's letter was received by the Administrative Review Team when it convened in May 1993 to consider procedures for resolving formal disagreements within the Department of Pharmacology, particularly Messiha's grievances. We agree with the trial court, however, that Messiha has not shown Miceli's letter influenced the Administrative Review Team or any of the defendants. Moreover, Messiha concedes he could begin an independent action against Miceli and Morehouse. We have said the availability of a separate action supports a trial court's denial of a motion to amend pleadings. *See Olson v. Brodell*, 128 N.W.2d 169, 179 (N.D. 1964). Under these circumstances, we conclude the trial court's denial of Messiha's belated request to amend his complaint to include a claim for tortious interference with contract against other defendants was not arbitrary, unconscionable, or unreasonable, and therefore was not an abuse of discretion.

### B

■ [¶ 11] Messiha asserts the trial court erred in denying his motion to amend to add a claim for civil conspiracy against the UND

defendants and Miceli. The court concluded there was nothing to show an understanding between Miceli and the UND defendants and denied Messiha's motion.

■ [¶ 12] A civil conspiracy requires an agreement between parties to inflict a wrong or an injury upon another. *Burr v. Kulas*, 1997 ND 98, ¶ 18 n. 3, 564 N.W.2d 631. We agree with the trial court that Miceli's unsolicited letter, by itself, does not evidence an agreement between the UND defendants and Miceli. Messiha has not cited any other evidence for an agreement between Miceli and the UND defendants. A trial court does not abuse its discretion in denying a requested amendment that would be futile. *See First Interstate Bank v. Rebarchek*, 511 N.W.2d 235, 243 (N.D.1994). We hold the trial court did not abuse its discretion in denying Messiha's motion to add a civil conspiracy claim to his complaint.

### C

■ [¶ 13] Messiha contends the trial court erred in denying his motion to amend his complaint against the UND defendants to add a claim for violations of the law against a secret personnel file. The court ruled Messiha had failed to produce any documents or other information that was kept secretly from him in violation of N.D.C.C. § 15–38.2–06, and the interests of justice precluded him from amending his complaint as a fishing expedition to find possible statutory violations. The court's decision was not arbitrary, unconscionable, or unreasonable, and therefore was not an abuse of discretion.

### II

[¶ 14] Messiha argues the trial court erred in granting summary judgment dismissal of his remaining claims. We review these issues under the summary judgment standards of N.D.R.Civ.P. 56. In *Perry Center, Inc. v. Heitkamp*, 1998 ND 78, ¶ 12, 576 N.W.2d 505, we explained summary judgment is appropriate for deciding an action promptly without a trial if, after viewing the evidence in the light most favorable to the party opposing the motion and giving that party the benefit of all favorable inferences that rea-

sonably can be drawn from the evidence, there is no genuine dispute as to either the material facts or the inferences to be drawn from the undisputed facts, or if only a question of law is involved.

[¶ 15] A party resisting summary judgment may not simply rely upon pleadings or unsupported conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means that raises a dispute of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by citing the page and line in depositions or other documents containing evidence that disputes a material fact. *Kummer v. City of Fargo,* 516 N.W.2d 294, 297 (N.D.1994). As *Kummer,* 516 N.W.2d at 297, explains, if a party resisting summary judgment fails to present pertinent evidence on an element essential to a claim, it is presumed no such evidence exists.

## A

[¶ 16] Messiha asserts the trial court erred in dismissing his contractual claims against UND and its officials. The court ruled Messiha failed to comply with the notice requirements of the pre–1991 version of N.D.C.C. § 32–12–03:

> No action upon a claim arising upon contract for the recovery of money only can be maintained against the state until the claim has been presented to the office of management and budget for allowance and allowance thereof refused. The neglect or refusal of the office to act on such claim for a period of ten days after its presentation for allowance shall be deemed a refusal to allow the claim.

In 1991, the Legislature amended N.D.C.C. § 32–12–03 to require contractual claims for money to be presented to the "department, institution, agency, board, or commission to which the claim relates" instead of the "office of management and budget." 1991 N.D. Sess. Laws ch. 359, § 1. Messiha asserts his claims are governed by the 1991 version of the statute and the exhaustion of his administrative remedies at UND and by appeal to the Board of Higher Education satisfied the requirements of that statute.

[¶ 17] In *Livingood v. Meece,* 477 N.W.2d 183, 188–89 (N.D.1991), we recognized the Legislature had amended N.D.C.C. § 32–12–03 in 1991, but we applied the earlier version of the statute and held it required a claimant making a contractual claim for the recovery of money against the State to present a written claim to OMB. We recognized one purpose of the statute was to inform administrators of the amount of a claim so they had an opportunity to investigate and determine if it should be paid or disputed. *Livingood,* at 189. *See Herman v. Magnuson,* 277 N.W.2d 445, 453–54 (N.D.1979) (recognizing several legitimate state interests served by claim presentment requirements, including settlement). In *Livingood,* at 188–89, we rejected an employee's claim that an administrative appeal and informal discussions with the director of OMB were sufficient to comply with the requirement for presentment of a written claim for money to OMB, and we affirmed the dismissal of the employee's contractual claims.

[¶ 18] The 1991 amendments to N.D.C.C. § 32–12–03 were "housekeeping" changes intended to eliminate OMB from the process for making contractual claims against the State and, instead, to require a claim to be made directly to the appropriate department, institution, agency, board, or commission. *Hearing on H.B. 1097 Before the Senate Judiciary Comm.,* 52nd N.D. Legis. Sess. (Jan. 28, 1991) (testimony of Bud Walsh, OMB Director of Accounting Operations). The 1991 amendments changed only the entity that must be presented with a written claim for money. Nothing in the legislative history suggests the amendments deleted the requirement for presentment of a written claim for money. As in *Livingood,* we reject the argument that an administrative appeal satisfies the statutory requirement for presentment of a written claim for money. We believe construing the statute to allow an administrative appeal to satisfy the statutory requirement for presentment of a claim would make meaningless the language requiring presentment of a claim for the recovery of money. We construe statutes to give meaning to each word and phrase, if possible. *Raboin v. North Dakota Workers Comp. Bureau,* 1997 ND 221, ¶ 32, 571 N.W.2d 833.

We hold both versions of N.D.C.C. § 32–12–03 require presentment of a written claim for money to the designated entity.

[¶ 19] Messiha's complaint does not allege he presented a written claim for money to any entity before bringing this action. *See Livingood,* 477 N.W.2d at 188. Messiha's formal grievances are not part of this record, and his administrative appeal to the State Board of Higher Education said he was appealing his dismissal for cause without any reference to a claim for money. In response to the motion for summary judgment, Messiha did not present any evidence by affidavit or other comparable means to raise a factual dispute that he presented a written claim for money to OMB, UND, or the State Board of Higher Education. A party resisting summary judgment must present competent admissible evidence to raise a disputed fact. *Kummer,* 516 N.W.2d at 297. Messiha has failed to present evidence to establish he presented a written claim for money to any entity as required by either version of N.D.C.C. § 32–12–03. We therefore conclude the trial court did not err in dismissing his contractual claims.

### B

■ [¶ 20] Messiha argues the trial court erred in dismissing his noncontractual claims under the doctrine of sovereign immunity, because those claims did not accrue until after this Court abrogated sovereign immunity in *Bulman v. Hulstrand Const. Co.,* 521 N.W.2d 632 (N.D.1994). Messiha asserts that, although he served his initial complaint in September 1994, his cause of action did not accrue, under *Long v. Samson,* 1997 ND 174, 568 N.W.2d 602 and *Thompson v. Peterson,* 546 N.W.2d 856 (N.D.1996), until his administrative remedies were completely exhausted by the State Board of Higher Education decision in September 1995.

[¶ 21] In *Bulman,* 521 N.W.2d at 640, we prospectively abrogated the State's sovereign immunity from tort liability effective fifteen days after the fifty-fourth legislative assembly adjourned so the Legislature could implement a statutory plan for tort claims. In response to *Bulman,* the Legislature enacted 1995 N.D. Sess. Laws ch. 329, codified at N.D.C.C. ch. 32–12.2, for tort claims against the State. N.D.C.C. ch. 32–12.2 took effect fifteen days after the Legislature adjourned on April 7, 1995, and applies to claims accruing after that effective date. *See* 1995 N.D. Sess. Laws ch. 329, §§ 20, 21. Here, assuming Messiha's noncontractual claims accrued after the effective date of the abrogation of sovereign immunity, they are governed by the presentment requirement of N.D.C.C. § 32–12.2–04(1)[2].

> A person bringing a claim against the state or a state employee for an injury shall present to the director of the office of management and budget within one hundred eighty days after the alleged injury is discovered or reasonably should have been discovered a written notice stating the time, place, and circumstances of the injury, the names of any state employees known to be involved, and the amount of compensation or other relief demanded. The time for giving the notice does not include the time during which a person injured is incapacitated by the injury from giving the notice. If the claim is one for death, the notice may be presented by the personal representative, surviving spouse, or next of kin within one year after the alleged injury resulting in the death.

Under similar statutes, we have held that actual notice of a claim does not satisfy the

**2.** The trial court ruled Messiha's noncontractual claims were barred by sovereign immunity. Because we decide his noncontractual claims under N.D.C.C. § 32–12.2–04(1), we do not need to decide when those claims accrued for purposes of the abrogation of sovereign immunity. We also do not consider UND's argument that its actions came under discretionary acts immunity under N.D.C.C. § 32–12.2–02(3). *See Perry Center,* 1998 ND 78, 576 N.W.2d 505; *Loran v. Iszler,* 373 N.W.2d 870 (N.D.1985); *Gottschalck v. Shepperd,* 65 N.D. 544, 260 N.W. 573 (1935).

Although the statutory presentment requirement was not argued or briefed to us, we decide Messiha's noncontractual claims on presentment to foster an orderly development of the law for tort claims against the State. After all, our duty is not to decide which lawyer did better work, but it is to decide what the correct law is to apply to the case decided. *See State v. Holecek,* 545 N.W.2d 800, 804 (N.D.1996) (describing our duty to decide applicability of relevant statutes whether or not the parties have cited them or argued a particular construction).

statutory requirement for presenting written notice of a claim to a governmental body. *See Livingood,* 477 N.W.2d at 189; *Besette v. Enderlin Sch. Dist. No. 22,* 288 N.W.2d 67, 71 (N.D.1980). In *Besette,* 288 N.W.2d at 73, we held a similar ninety-day presentment requirement for claims against political subdivisions was mandatory and the failure to present the claim within that time precluded a tort claim against the political subdivision.

[¶ 22] Messiha failed to present any evidence by affidavit or otherwise that he presented a written claim for compensation to OMB as required by N.D.C.C. § 32–12.2–04. We therefore hold the trial court did not err in granting summary judgment dismissal of his noncontractual claims.

[¶ 23] We affirm the summary judgment dismissal of Messiha's complaint.

[¶ 24] VANDE WALLE, C.J., and SANDSTROM, NEUMANN and MARING, JJ., concur.