2002 ND 22

**Daphne GHORBANNI, Plaintiff and Appellant,**

v.

**NORTH DAKOTA COUNCIL ON THE ARTS and the State of North Dakota, Defendants and Appellees.**

No. 20010164.

Supreme Court of North Dakota.

Feb. 20, 2002.

Rehearing Denied March 12, 2002.

Albert A. Wolf (argued) and Steven L. Latham (on brief), Wheeler Wolf, Bismarck, for plaintiff and appellant.

Tag C. Anderson, Assistant Attorney General, Attorney General's Office, Bismarck, for defendants and appellees.

VANDE WALLE, Chief Justice.

[¶ 1] Daphne Ghorbanni appealed from a summary judgment dismissing her claims for retaliatory discharge and defamation against the North Dakota Council on the Arts and the State of North Dakota. We conclude Ghorbanni failed to properly give notice of her claims as required by statute, and we affirm.

I

[¶ 2] The North Dakota Council on the Arts ("the Council") is a statutorily created body made up of members appointed by the governor. N.D.C.C. § 54–54–02. Daphne Ghorbanni was hired as Executive Director of the Council by its chairman, David Trottier, in August 1999. *See* N.D.C.C. § 54–54–04 (the council chairman may employ officers and other employees of the Council, and "[s]uch persons shall serve at the pleasure of the chairman").

[¶ 3] In reviewing the Council's budget, Ghorbanni discovered several discrepancies, including alleged misuse of public funds. Ghorbanni reported these financial discrepancies to the Office of Management and Budget and submitted a written report for consideration by the Council at its meeting scheduled for May 5–6, 2000. Before Ghorbanni could present her allegations to the Council, Trottier terminated her employment on April 28, 2000. On May 1, 2000, Trottier gave a radio interview explaining alleged reasons for Ghorbanni's termination. On May 6, 2000, the governor issued a press release stating he supported Trottier's decision to terminate Ghorbanni and indicating Ghorbanni did not have the management skills the position required.

[¶ 4] On May 12, 2000, Ghorbanni's attorney wrote to Trottier requesting written reasons for the termination and asking that Ghorbanni be allowed to attend the May 20, 2000, meeting of the Council to present a response to the stated reasons for termination. Ghorbanni was not allowed to appear at the meeting. On May 22, 2000, assistant attorney general Tag Anderson wrote to Ghorbanni's attorney, stating: "The Council directed Mr. Trottier and myself as council [sic] for the North

Dakota Council on the Arts to enter into a dialog with you to ascertain specifically what it is that you are requesting." Following further discussions between the attorneys, Ghorbanni's attorney on June 26, 2000, sent a letter to Anderson outlining Ghorbanni's claims against the State.

[¶ 5] Ghorbanni commenced this action against the Council and the State on October 2, 2000, alleging retaliatory discharge and defamation. Ghorbanni alleged that she was fired for reporting alleged misuse of public funds by members of the Council, including Trottier, and that she was defamed by the May 6, 2000, press release. After the Council and the State filed an answer alleging Ghorbanni had failed to comply with procedural prerequisites, Ghorbanni on November 13, 2000, presented written notice of her claims to the Office of Management and Budget ("OMB"). The Council and the State moved for summary judgment, arguing Ghorbanni had failed to give timely notice of her claims to the Director of OMB as required by N.D.C.C. § 32–12.2–04(1). Ghorbanni moved to amend her complaint to include allegations that she had complied with the notice-of-claim requirements. The trial court concluded Ghorbanni had failed to give the statutorily required notice, and therefore ordered dismissal of the complaint and denial of Ghorbanni's motion to amend the complaint. Ghorbanni then moved to amend the judgment. Ghorbanni's motion to amend the judgment was denied, and she appealed from the summary judgment dismissing her complaint and from the order denying her motion to amend the judgment.

II

■ [¶ 6] Ghorbanni argues the trial court erred in concluding she failed to comply with N.D.C.C. § 32–12.2–04(1), which provides, in part:

A person bringing a claim against the state or a state employee for an injury shall present to the director of the office of management and budget within one hundred eighty days after the alleged injury is discovered or reasonably should have been discovered a written notice stating the time, place, and circumstances of the injury, the names of any state employees known to be involved, and the amount of compensation or other relief demanded.

For purposes of this section, an "injury" includes "injury to a person's rights or reputation." N.D.C.C. § 32–12.2–01(2) and (4); *see also State v. Haskell*, 2001 ND 14, ¶ 9, 621 N.W.2d 358.

[¶ 7] Ghorbanni was terminated on April 28, 2000, and the allegedly defamatory press release was issued on May 6, 2000. Ghorbanni presented formal written notice to OMB on November 13, 2000, more than 180 days after the "injuries" had occurred. Ghorbanni does not assert the November 13, 2000 notice was timely or satisfied the requirements of N.D.C.C. § 32–12.2–04(1). Rather, Ghorbanni contends that the June 26, 2000 letter from her attorney to Anderson constituted timely notice of her claims to OMB under the statute. Ghorbanni argues that Anderson had made an appearance on behalf of the State, that Anderson was statutorily required to communicate the content of the June 26, 2000 claim letter to OMB, and that the purpose of the statute was thereby met.

■ [¶ 8] Our prior cases indicate strict compliance with the requirements of N.D.C.C. § 32–12.2–04(1) is a prerequisite to bringing an action against the State or its employees. Absent the timely filing of a notice of claim under N.D.C.C. § 32–12.2–04(1), the court lacks subject matter jurisdiction to entertain the lawsuit. *Kautzman v. McDonald*, 2001 ND 20, ¶ 11, 621 N.W.2d 871; *Haskell*, 2001 ND 14, ¶ 9, 621 N.W.2d 358; *Cooke v. University of N.D.*, 1999 ND 238, ¶ 9, 603 N.W.2d 504;

*Earnest v. Garcia,* 1999 ND 196, ¶ 7, 601 N.W.2d 260; *Allied Mut. Ins. Co. v. Director of the N.D. Dep't of Transp.,* 1999 ND 2, ¶ 16, 589 N.W.2d 201. The plain language of the statute requires explicit written notice of the claim; actual notice is insufficient. *Kautzman,* at ¶ 11; *Earnest,* at ¶ 6; *Allied Mut. Ins. Co.,* at ¶¶ 10, 15–16; *Messiha v. State,* 1998 ND 149, ¶ 21, 583 N.W.2d 385.

[¶ 9] The statute explicitly requires that the notice of claim must be presented to the director of OMB. Presenting a claim letter to an assistant attorney general does not satisfy the statute. *See Kautzman,* 2001 ND 20, ¶ 13, 621 N.W.2d 871; *see also* J. James Fraiser III, Annotation, *Persons or Entities Upon Whom Notice of Injury or Claim Against State or State Agencies May or Must Be Served,* 45 A.L.R. 5th 173, § 2[a] (1997) ("When a claim-notice statute mandates service upon only a specific person ... the courts will often require strict compliance therewith.").

[¶ 10] We conclude the trial court did not err in determining Ghorbanni had failed to comply with N.D.C.C. § 32–12.2–04(1) and the court therefore lacked subject matter jurisdiction over her claims.

### III

[¶ 11] Ghorbanni argues that her retaliatory discharge action sounds in contract and should therefore be governed, not by N.D.C.C. § 32–12.2–04(1), but by the notice of claim provision contained in N.D.C.C. § 32–12–03, which provides:

> No action upon a claim arising upon contract for the recovery of money only can be maintained against the state until the claim has been presented to the department, institution, agency, board, or commission to which claim relates for allowance and allowance thereof refused.

The neglect or refusal of the office to act on such claim for a period of ten days after its presentation for allowance must be deemed a refusal to allow the claim. Ghorbanni contends the June 26, 2000 letter to Anderson satisfied this statute, and her retaliatory discharge action was therefore properly before the district court.

[¶ 12] Ghorbanni argues "[h]er claims are for recovery of money as a result of the retaliatory actions of the State, based upon her termination for revealing information related to the Council's chairman's misuse of public funds." She argues her dismissal violated public policy, as expressed in N.D.C.C. § 34–11.1–04, which expressly prohibits an employer from terminating a public employee for reporting job-related misuse of public resources, and N.D.C.C. § 34–01–20(1)(a), which prohibits an employer from terminating an employee for reporting a suspected violation of the law.[1]

[¶ 13] We have previously recognized that an action for retaliatory discharge in violation of public policy is a tort. *See Krein v. Marian Manor Nursing Home,* 415 N.W.2d 793, 794–95 (N.D.1987). The "overwhelming majority" of courts which have considered whether a retaliatory discharge case grounded upon violation of public policy is actionable in contract or in tort have concluded such actions sound in tort, not in contract. *Sterling Drug, Inc. v. Oxford,* 294 Ark. 239, 743 S.W.2d 380, 385 (1988); *see also, e.g., Batey & Sanders, Inc. v. Dodd,* 755 So.2d 581, 583 (Ala.Civ. App.1999); *Burke v. Board of Dirs.,* 709 N.E.2d 1036, 1041–42 (Ind.Ct.App.1999), *modified in part on other grounds,* 711 N.E.2d 1288 (Ind.Ct.App.1999); *Stebbings v. University of Chicago,* 312 Ill.App.3d 360, 244 Ill.Dec. 825, 726 N.E.2d 1136, 1140 (2000); *Murphy v. City of Topeka–Shawnee County Dep't of Labor Servs.,* 6

---

1. Section 34–01–20(3), N.D.C.C., specifically authorizes a civil action for injunctive relief, actual damages, and attorney's fees for a violation of N.D.C.C. § 34–01–20.

Kan.App.2d 488, 630 P.2d 186, 190 (1981); *Firestone Textile Co. v. Meadows*, 666 S.W.2d 730, 733 (Ky.1983); *Phillips v. Butterball Farms Co.*, 448 Mich. 239, 531 N.W.2d 144, 147–48 (1995); *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 857 P.2d 776, 782, n. 5 (1993); *Townsend v. Living Centers Rocky Mountain, Inc.*, 947 P.2d 1297, 1299 (Wyo.1997). The Supreme Court of Michigan explained in *Phillips*, 531 N.W.2d at 147 (footnotes omitted):

> [T]he source of this right against retaliatory discharge does not stem from any term agreed upon by the contracting parties, but from public policy now expressed in a statute. The duty not to retaliate against an employee for filing a worker's compensation claim arises independently from the employment contract. In *Lathrop v. Entenmann's, Inc.*, 770 P.2d 1367, 1373 (Colo.App., 1989), a Colorado appellate court said: "[t]he duty of the employer to refrain from retaliation in violation of a state's public policy does not find its source in any private contract; it is a duty imposed by the state's legislative body; and it is one that cannot be adjusted or modified by the private actions of an employer and a collective bargaining agent."

[¶ 14] We agree with the majority view that an action for retaliatory discharge based upon public policy sounds in tort, not contract. Accordingly, the notice-of-claim statute governing contract claims against the State, N.D.C.C. § 32–12–03, is inapplicable. As we noted in *State v. Haskell*, an action alleging wrongful termination in violation of the Human Rights Act:

> Smith has not specified any relief sought other than money damages for lost income, damage to her reputation and attorney's fees. Smith's complaint therefore, seeks only money damages for the very kind of claim for which N.D.C.C. § 32-12.2-04 requires a person to present a notice to the director of the office of management and budget within 180 days. Under Ch. 32–12.2, injury includes personal injury, which is defined as including "... injury to a person's rights or reputation." N.D.C.C. § 32–12.2-01(2) and (4).

*Haskell*, 2001 ND 14, ¶ 9, 621 N.W.2d 358.

[¶ 15] We conclude Ghorbanni's retaliatory discharge claim sounded in tort, and N.D.C.C. § 32–12.2–04(1) was the applicable notice-of-claim statute.

IV

[¶ 16] The summary judgment dismissing the complaint and the order denying Ghorbanni's motion to amend the judgment are affirmed.

[¶ 17] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.