# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2026 ND 19

University of North Dakota,                                    Petitioner

    v.

Barbara Whelan, Judge of the District

Court, and Andrew Sangster, On Behalf

of Himself and All Others Similarly Situated,          Respondents

## No. 20250286

Petition for Supervisory Writ.

PETITION FOR SUPERVISORY WRIT GRANTED.

Opinion of the Court by Jensen, Justice.

Scott K. Porsborg (argued) and Brian D. Schmidt (appeared), Special Assistant Attorneys General, Bismarck, ND, for petitioner.

Rowdy B. Meeks (argued), Prairie Village, KS, and Leo F.J. Wilking (appeared), Fargo, ND, for respondent Andrew Sangster.

# UND v. Whelan
## No. 20250286

**Jensen, Justice.**

[¶1]   The University of North Dakota seeks a supervisory writ directing the district court to dismiss a class action lawsuit filed by Andrew Sangster. We hold Sangster's claims are not authorized by N.D.C.C. ch. 32-12-02 because they do not arise upon a contract. We grant the petition for a writ and exercise our supervisory authority to direct the district court to dismiss the case for lack of jurisdiction.

I

[¶2]   Sangster filed a class action lawsuit against UND. He alleges UND did not pay flight instructors for all of the time they worked. He claims UND only paid the instructors for time they spent with students. He asserts UND deliberately implemented policies and procedures that did not permit the instructors to log time they spent performing other duties, including scheduling, conducting pre-flight and post-flight procedures, recordkeeping, waiting at the airport, and answering student questions. Sangster brought four counts. Count 1 alleges violations of the Fair Labor Standards Act ("FLSA"); Count 2 alleges violations of North Dakota wage laws; Count 3 alleges UND has been unjustly enriched; and Count 4 alleges UND committed conversion. Sangster sought relief in the form of damages, including liquidated and punitive damages, attorney's fees, and costs.

[¶3]   UND filed a motion to dismiss. UND argued the district court lacks subject matter jurisdiction because Sangster did not provide the Office of Management and Budget ("OMB") with notice of his claims within the 180-day deadline as required by N.D.C.C. ch. 32-12.2. Sangster admitted he did not provide notice to the OMB. He instead argued the notice requirement does not apply to his claims because they are contractual in nature. He asserted the court had jurisdiction because he presented his contract claims to UND as required by N.D.C.C. ch. 32-12.

[¶4]   The district court denied UND's motion to dismiss in part. The court decided Sangster's FLSA claim, state wage law claim, and unjust enrichment claim are contractual in nature because they relate to his employment contract. The court explained, "Sangster focuses on uniformly applied offer letters, handbooks, policies and practices which he asserts were illegal and thus resulted in an illegal failure to pay Sangster for all hours worked, including overtime." The court dismissed Sangster's conversion claim, noting Sangster agreed at oral argument that the 180-day notice requirement applies.

II

[¶5]   UND seeks a supervisory writ. UND argues the N.D.C.C. ch. 32-12.2 notice requirement applies because Sangster's claims are based on statutory rights. UND argues the district court consequently lacks subject matter jurisdiction and we should direct the court to dismiss Sangster's lawsuit.

> Under N.D. Const. art. VI, § 2, and N.D.C.C. § 27-02-04, this Court may examine a district court decision by invoking our supervisory authority. We exercise our authority to issue supervisory writs rarely and cautiously, and only to rectify errors and prevent injustice in extraordinary cases when no adequate alternative remedy exists. Our authority to issue a supervisory writ is purely discretionary, and we determine whether to exercise supervisory jurisdiction on a case-by-case basis, considering the unique circumstances of each case. Exercise of supervisory jurisdiction may be warranted when issues of vital concern regarding matters of important public interest are presented.

*State v. Lee*, 2025 ND 148, ¶ 6, 25 N.W.3d 763 (quoting *Sauvageau v. Bailey*, 2022 ND 86, ¶ 7, 973 N.W.2d 207).

[¶6]   UND argues the case warrants a supervisory writ because, without one, the State will be subjected to costly class action litigation that the district court has no jurisdiction to entertain. We have exercised supervisory jurisdiction under similar circumstances. *See, e.g., Dimond v. State Bd. of Higher Educ.*, 1999 ND 228, ¶ 19, 603 N.W.2d 66 (exercising supervisory jurisdiction when a court denied a motion to dismiss for lack of subject matter jurisdiction based on a consent to suit requirement); *State v. Haskell*, 2001 ND 14, ¶ 4, 621 N.W.2d 358

2

(same). We conclude this is an appropriate case to exercise our supervisory jurisdiction because, as explained in the next section, we agree the district court lacks jurisdiction over Sangster's claims.

III

[¶7] Article I, § 9 of the North Dakota Constitution provides the Legislature authority to direct the manner in which the State may be sued. It states:

> All courts shall be open, and every man for any injury done him in his lands, goods, person or reputation shall have remedy by due process of law, and right and justice administered without sale, denial or delay. Suits may be brought against the state in such manner, in such courts, and in such cases, as the legislative assembly may, by law, direct.

This Court has interpreted Article I, § 9 to mean the State can impose requirements for suits against it, but the State does not enjoy absolute sovereign immunity. *See Bulman v. Hulstrand Const. Co.,* 521 N.W.2d 632, 637 (N.D. 1994) (abolishing sovereign immunity for tort actions and explaining the constitution "merely authorizes the Legislature to direct the manner, the courts, and the cases in which suits may be brought against the State"). A party seeking to sue the State must strictly comply with statutory requirements. *Voigt v. State*, 2008 ND 236, ¶ 4, 759 N.W.2d 530.

[¶8] Under N.D.C.C. § 32-12-02, an action "arising upon contract" may be brought "against the state the same as against a private person." A contract claim must first be presented and refused before an action can be brought:

> No action upon a claim arising upon contract for the recovery of money only can be maintained against the state until the claim has been presented to the department, institution, agency, board, or commission to which claim relates for allowance and allowance thereof refused. The neglect or refusal of the office to act on such claim for a period of ten days after its presentation for allowance must be deemed a refusal to allow the claim.

3

N.D.C.C. § 32-12-03. One purpose of the presentment requirement is "to inform administrators of the amount of a claim so they [have] an opportunity to investigate and determine if it should be paid or disputed." *Messiha v. State*, 1998 ND 149, ¶ 17, 583 N.W.2d 385.

[¶9]   The Legislature has also imposed requirements for certain noncontractual claims under N.D.C.C. ch. 32-12.2, which is titled "Claims Against the State." It provides notice be given to the OMB within 180 days:

> A person bringing a claim against the state or a state employee for an injury shall present to the director of the office of management and budget within one hundred eighty days after the alleged injury is discovered or reasonably should have been discovered a written notice of the alleged claim stating the time, place, and circumstances of the claim, the names of any state employees known to be involved, and the amount of compensation or other relief demanded.

N.D.C.C. § 32-12.2-04(1)(a). For purposes of this statute, the word "claim" contemplates suits "for an injury caused by the state or a state employee[.]" N.D.C.C. § 32-12.2-01(1). The word "injury" is defined as "personal injury, death, or property damage." N.D.C.C. § 32-12.2-01(2). Personal injury "includes bodily injury, mental injury, sickness, or disease sustained by a person and injury to a person's rights or reputation." N.D.C.C. § 32-12.2-01(4).

[¶10] The N.D.C.C. ch. 32-12.2 notice requirement "encourages prompt investigation while evidence is still fresh; repair of any dangerous condition; quick and fair settlement of meritorious claims; and preparation of fiscal planning to meet possible liability." *Cooke v. Univ. of N.D.*, 1999 ND 238, ¶ 7, 603 N.W.2d 504. "Absent the timely filing of a notice of claim under N.D.C.C. § 32-12.2-04(1), the court lacks subject matter jurisdiction to entertain the lawsuit." *Ghorbanni v. N.D. Council on Arts*, 2002 ND 22, ¶ 8, 639 N.W.2d 507; *see also Moen v. State*, 2003 ND 17, ¶ 5, 656 N.W.2d 671 (same); *Knutson v. Cnty. of Barnes*, 2002 ND 68, ¶ 4, 642 N.W.2d 910 (same); *Kautzman v. McDonald*, 2001 ND 20, ¶ 11, 621 N.W.2d 871 (same); *Earnest v. Garcia*, 1999 ND 196, ¶ 7, 601 N.W.2d 260 (same).

[¶11] Interpretation and application of a statute is a legal issue subject to de novo review. *Cache Private Capital Diversified Fund LLC v. Braddock*, 2025 ND 168, ¶ 20, 26 N.W.3d 688. The primary objective when interpreting a statute is to determine the Legislature's intent as expressed by the language it used. *RMM Props., L.L.L.P. v. City of Minot*, 2024 ND 213, ¶ 8, 14 N.W.3d 31. We understand a statute's language based on its ordinary meaning unless a contrary intention plainly appears. *Id.* ¶ 9. We read statutes in context, as they relate to others on the same subject, giving meaning to each without rendering one or the other useless. *Id.* We construe statutes as a whole attempting to harmonize related provisions and give each provision effect. *Id.*

A

[¶12] UND argues Sangster's FLSA and North Dakota wage law claims fall within the N.D.C.C. ch. 32-12.2 definition of personal injury because the claims seek to enforce statutory rights. Sangster insists N.D.C.C. ch. 32-12.2 does not apply to his claims. He asserts his claims are authorized by N.D.C.C. ch. 32-12 because they are contractual in nature. He argues UND agreed to abide by state and federal labor laws and consequently those laws are incorporated into the contract.

[¶13] We agree the subject matter of a contract is governed by relevant statutory law. *See State ex rel. Cleveringa v. Klein*, 249 N.W. 118, 121 (N.D. 1933) (explaining "the laws which subsist at the time and place of making a contract, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms." (cleaned up)); *see also Lillethun v. Tri-County Elec. Coop.*, 152 N.W.2d 147, 150 (N.D. 1967) (stating "all relevant existing laws at the time of the contract become a part of the contract and must be read into it"); *Kaisershot v. Gamble-Skogmo, Inc.*, 96 N.W.2d 666, 669 (N.D. 1959) (stating existing laws "become a part of such contract and must be read into it just as if an express provision to that effect were expressly incorporated therein").

[¶14] This general principle does not operate to transform an action based on statutory rights into a contract claim. Despite the existence of an employment contract, we declined to characterize statutory claims as contractual in *Ghorbanni*

*v. North Dakota Council on the Arts*, 2002 ND 22. In *Ghorbanni*, a state entity terminated an employee after she reported financial discrepancies, including alleged misuse of public funds. *Id.* ¶ 3. She sued the state entity asserting it violated statutes prohibiting retaliatory firings. *Id.* ¶ 12. The district court dismissed the lawsuit because she failed to comply with the N.D.C.C. § 32-12.2-04(1) notice requirement. *Id.* ¶ 5. On appeal, she argued the notice requirement did not apply because her action "sounds in contract," making the N.D.C.C. § 32-12-03 presentment provision the applicable requirement. *Id.* ¶ 11. This Court rejected her argument explaining the claims did not "stem from any term agreed upon by the contracting parties, but from public policy now expressed in a statute." *Id.* ¶ 13 (quoting *Phillips v. Butterball Farms Co.*, 531 N.W.2d 144, 147 (Mich. 1995)).

[¶15] Other jurisdictions have reached similar conclusions in the specific context of employees seeking to enforce wage regulations. In *King v. State*, 614 N.W.2d 341 (Neb. 2000), Nebraska State Patrol employees sued the State of Nebraska alleging its overtime policies violated the FLSA. The issue was whether the claims fell within Nebraska's sovereign immunity waiver for "*any matter founded upon or growing out of a contract*[.]" *Id.* at 347. The Supreme Court of Nebraska explained the claims were not contractual:

> An examination of the record in the instant case reveals that the matters at issue in these suits are not "founded upon or growing out of" the employment contract with the State, but, rather, are matters involving rights created by federal law. The appellants' petitions demonstrate the nature of their actions, as they are brought "to address violations of the [FLSA]," and not rights arising from their contracts with the State. In other words, the appellants' suits seek to invalidate provisions of employment contracts based upon rights created by the federal FLSA; they are not suits based upon rights created by the contracts themselves.

*Id.*

[¶16] Another example is *Allen v. Fauver*, 768 A.2d 1055 (N.J. 2001). Corrections officers sued the State of New Jersey seeking overtime wages under the FLSA and New Jersey wage laws. *Id.* at 1057. The issue was whether the claims fell

6

within New Jersey's sovereign immunity waiver for "liability arising out of an express contract or a contract implied in fact." *Id.* at 1058. The Supreme Court of New Jersey explained the claims were not contractual:

> [N]owhere in the complaint do plaintiffs assert a contract claim. Their cause of action is singularly statutory. Plaintiffs seek to avoid that difficulty by arguing that theirs is an action based in contract under the contractual language cited from their collective bargaining agreement, and therefore the legislative waiver of sovereign immunity in the Contractual Liability Act stretches to encompass a right to sue the State in state court under the FLSA. That is at best a "bootstrapping" argument put forward by plaintiffs because they cannot demonstrate that the Legislature has expressly consented to suit against the State under that federal statutory scheme.
>
> In fact, plaintiffs' claim is not contractual; it is statutory. It seeks statutory remedies. . . . [Plaintiffs'] recharacterization of the claim cannot change the essential nature of the claim. Plaintiffs' complaint alleges a violation of the federal FLSA and seeks damages pursuant to rights created by that federal statute. We can see no reasonable conclusion other than that plaintiffs' claim is a statutory claim.

*Id.* at 1059 (cleaned up). *See also Nuñez v. Indiana Dep't of Child Servs.*, 817 F.3d 1042, 1045 (7th Cir. 2016) (rejecting argument that Indiana waived sovereign immunity from FLSA claims because its requirements "are embedded in all employment relationships and thus in contracts"); *Cockrell v. Bd. of Regents of New Mexico State Univ.*, 45 P.3d 876, 885 (N.M. 2002) ("We determine that Cockrell's direct FLSA claim is not one based on contract."); *Commonwealth v. Luzik*, 524 S.E.2d 871, 877 (Va. 2000) (explaining suit to recover wages under the FLSA "was not brought in the style of a contract claim").

[¶17] Sangster did not plead a contract claim. The words "contract," "agreement," and "breach" are not in Sangster's complaint. *See Three Aces Props. LLC v. United Rentals (North America), Inc.*, 2020 ND 258, ¶ 10, 952 N.W.2d 64 ("The elements for a breach of contract claim are: (1) the existence of a contract; (2) breach of the contract; and (3) damages which flow from the breach."). He instead alleged UND violated state and federal labor laws by only paying flight

instructors for "student contact hours" and by not keeping proper records. He claimed UND's "unlawful FLSA conduct" has been "widespread, repeated, and consistent," making UND "liable under the FLSA[.]" He seeks relief, including liquidated damages, attorney's fees, costs and expenses, "as provided by the FLSA, 29 U.S.C. § 216(b)." He also claims the flight instructors are entitled to double the amount of unpaid wages under N.D.C.C. § 34-14-09.1. Aside from his assertion that UND failed to comply with applicable wage and labor laws, Sangster has not identified a specific contractual term UND allegedly breached. We conclude Sangster's claims for relief under the FLSA and North Dakota wage laws are not authorized by N.D.C.C. ch. 32-12 because they are not contractual in nature.

B

[¶18] UND argues N.D.C.C. ch. 32-12 also does not authorize Sangster's unjust enrichment claim. UND asserts that, by definition, unjust enrichment only exists in the absence of an actual contract. Sangster argues his claims are authorized by N.D.C.C. ch. 32-12. He asserts unjust enrichment is contractual in nature because it allows for relief based on a contract implied by law.

[¶19] We have explained the theory underlying a claim for unjust enrichment:

> Unjust enrichment is an equitable doctrine based upon a quasi or constructive contract implied by law to prevent a person from being unjustly enriched at the expense of another. The doctrine serves as a basis for requiring restitution of benefits conferred in the absence of an expressed or implied in fact contract. . . . Unjust enrichment requires: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification for the enrichment and impoverishment; and (5) an absence of remedy provided by law.

*Ritter, Laber & Assocs., Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 26, 680 N.W.2d 634 (cleaned up).

[¶20] Sangster relies on older cases where this Court decided North Dakota's waiver of sovereign immunity for an action "arising upon contract" under

N.D.C.C. § 32-12-02 "includes an implied as well as an express contract." *Little v. Burleigh Cnty.*, 82 N.W.2d 603, 607 (N.D. 1957); *see also Stark Cnty. v. State*, 160 N.W.2d 101, 105 (N.D. 1968) (explaining the N.D.C.C. § 32-12-02 waiver "has been held to include implied as well as express contracts"); *Ford Motor Co. v. State*, 231 N.W. 883, 885 (N.D. 1930) ("If the Legislature had intended that the state should be subject to suit only upon express contract, it would doubtless have said so."). These cases did not address whether N.D.C.C. ch. 32-12 authorizes an unjust enrichment claim seeking damages for unpaid labor.

[¶21] Other jurisdictions addressing similar issues have explained a claim for unjust enrichment may be grounded in contract or tort law. *See Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1007 (Colo. 2008) (en banc) (explaining the "scope of the remedy is broad, cutting across both contract and tort law"); *Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154 (Iowa 2001) (explaining a claim for unjust enrichment "may arise from contracts, torts, or other predicate wrongs"); *Hydro Conduit Corp. v. Kemble*, 793 P.2d 855, 860 (N.M. 1990) (same). Whether a claim for unjust enrichment sounds in tort or contract depends upon the factual basis underlying the claim. *Robinson*, at 1007. The issue requires a case-by-case examination of the pleadings. *Id.* When the unjust enrichment allegations are predicated on tortious conduct, such as misrepresentation or fraud, the claim is properly characterized as one arising in tort. *Id.* at 1008.

[¶22] Sangster's complaint alleges UND engaged in "deliberate illegal treatment" of the flight instructors. He claims UND employed policies and procedures that did not allow the flight instructors to log all of the time they actually worked. He also asserts UND provided inaccurate paychecks. He alleges UND knew the flight instructors were performing unpaid work and characterizes UND's conduct as "systematic," "willful," and "in bad faith." His allegations describe purposeful exploitation of the flight instructors. Sangster's assertions of intentionally wrongful conduct are indicative of a claim that is not grounded in contract law. Sangster's unjust enrichment claim is not authorized by N.D.C.C. ch. 32-12 because it is not contractual in nature.

## IV

[¶23] Sangster's FLSA claim, state wage law claim, and claim for unjust enrichment are not authorized by N.D.C.C. ch. 32-12 because they do not arise upon a contract. The petition for a supervisory writ is granted, and the district court is directed to dismiss the case for lack of jurisdiction.

[¶24]  Lisa Fair McEvers, C.J.
       Daniel J. Crothers
       Jerod E. Tufte
       Jon J. Jensen
       Douglas A. Bahr