2006 ND 60

Dr. Richard J. BROWN, Plaintiff and Appellant

v.

STATE of North Dakota, by and through the STATE BOARD OF HIGHER EDUCATION, Defendant and Appellee.

No. 20050365.

Supreme Court of North Dakota.

March 29, 2006.

Thomas D. Fiebiger, Ohnstad Twichell, P.C., Fargo, ND, for plaintiff and appellant.

Tag C. Anderson, Assistant Attorney General, Office of Attorney General, Bismarck, ND, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Richard Brown appealed from a district court judgment granting the State's motion to dismiss his complaint for lack of subject matter jurisdiction. Brown sued the State of North Dakota by and through the State Board of Higher Education alleging the Dean of the Graduate School at the University of North Dakota was without the authority to revoke Brown's doctoral degree. The district court concluded Brown did not exhaust his administrative remedies and, as a result, the district court lacked subject matter jurisdiction. We affirm.

I

[¶ 2] In August 2003, Brown received a Ph.D. in Teaching and Learning from the University of North Dakota. Brown received the degree based on the completion of his dissertation and upon the recommendation of the Dissertation Committee. The dissertation is required to be an original work involving research, study, and scholarly advancement. Brown's dissertation was reviewed by a dissertation committee and the committee recommended approval.

[¶ 3] Brown was also employed by UND, most recently as an Assistant Professor in the Nursing Department and the Director of the Nurse Anesthesia Program pursuant to a twelve-month contract ending June 30, 2005. Prior to the end of the contract, Brown voluntarily resigned his employment with UND. As a graduate student at UND, Brown was subject to the academic policies in UND's Code of Student Life. The policy regarding ethical conduct in research, scholarship, and creative activity from UND's Office of Re-

search, Development, and Compliance provides allegations of misconduct against a student who also serves in a research assistant capacity must be reported to the Vice President for Academic Affairs who will determine whether the complaint should be handled under the provisions of the Code of Student Life or the procedures provided by the Office of Research, Development, and Compliance. Martha Potvin, the Interim Vice President of Academic Affairs and Provost at UND, received a report of the claims against Brown and determined the issues surrounding Brown's dissertation were academic questions that should be handled under the Code of Student Life provisions governing academic matters.

[¶ 4] On October 7, 2004, Brown received an e-mail message from Dr. Lisa Allison–Jones, a nursing professor in another state. In her message, Dr. Allison–Jones indicated portions of Brown's dissertation were identical to her own dissertation. That same day, Brown sent an e-mail message to Myrna Olson, a professor in the Department of Teaching and Learning, and the Chair of the Doctoral Advisory Committee that reviewed Brown's dissertation, informing Olson of Allison–Jones's assertion. At a meeting with Brown, Olson advised Brown to thoroughly research all the materials he had that were related to his dissertation and to try and find how this conflict could have occurred. Additionally, Olson advised Brown to contact the online dissertation service to delay the publication and sale of the paper, as well as arrange any needed amendments. After being contacted directly by Dr. Allison–Jones and after comparing the dissertations, Olson referred the matter to the UND Graduate School to determine how to handle the academic issue.

[¶ 5] After discussing the matter with Brown's dissertation committee, Joseph Benoit, Dean of the UND Graduate School, sent Brown a letter outlining the initial findings that at least fourteen pages of Brown's dissertation were identical to Dr. Allison–Jones's dissertation and that other pages were identical to the dissertation of a person named Judith Scanlan. Based on these findings, Dean Benoit advised Brown the process for revoking Brown's doctoral degree would begin. The process for revocation included the right to a hearing before the Graduate Committee. Further communications were sent to Brown indicating the Graduate School was following through with the process for revocation and a hearing was scheduled for February 7, 2005. On February 2, 2005, Brown's counsel informed the Graduate Committee that neither Brown nor his counsel would be participating in the hearing.

[¶ 6] At the hearing, Dean Benoit presented his case in support of the decision to revoke the degree to the Graduate Committee. At the close of questioning, the Committee excused Dean Benoit and entered into deliberations. All voting members of the Committee participated. One non-voting student member contributed to the deliberations but did not vote. The Committee voted unanimously, with one member abstaining, to revoke Brown's Ph.D. on the grounds of plagiarism. On February 11, 2005, the Graduate Committee notified Brown of its decision and informed Brown that further review of the matter was available to him through the Student Academic Standards Committee. Brown never exercised this right and made no appeal to the Student Academic Standards Committee.

[¶ 7] Brown subsequently filed suit against the State by and through the State Board of Higher Education. The State moved to dismiss the case claiming the district court lacked subject matter juris-

diction because Brown failed to exhaust his administrative remedies. Alternatively, the State moved for summary judgment, claiming Brown's due process rights were not violated. The district court concluded Brown must exhaust all administrative remedies before bringing suit in the district court. The district court found Brown did not exhaust all his administrative remedies and held the district court lacked subject matter jurisdiction and, therefore, did not need to consider the motion for summary judgment.

## II

[¶ 8] When appellate processes are available and the remedies will provide adequate relief, those remedies must be exhausted before seeking judicial remedies, unless exhaustion would be futile. *Tracy v. Central Cass Pub. Sch. Dist.,* 1998 ND 12, ¶¶ 12–13, 574 N.W.2d 781. We have consistently required the exhaustion of remedies before the appropriate administrative agency as a prerequisite to making a claim in court. *See Thompson v. Peterson,* 546 N.W.2d 856, 861 (N.D.1996) (holding the failure to exhaust administrative remedies precluded a dismissed university professor from raising constitutional claims on appeal). "Failure to exhaust administrative remedies generally precludes making a claim in court." *Id.* Our past decisions holding the constitutionality of an act administered by an agency may be raised for the first time on appeal to the district court do not abolish the requirement for exhaustion of administrative remedies before suing in court. *Id.* at 863.

[¶ 9] This Court has applied the exhaustion of remedies doctrine in numerous instances. *See Soentgen v. Quain & Ramstad Clinic, P.C.,* 467 N.W.2d 73, 82 (N.D. 1991) (stating a physician is required to exhaust all available internal remedies provided by a hospital before instituting a judicial action for damages arising from exclusion or expulsion); *Schuck v. Montefiore Pub. Sch. Dist. No. 1,* 2001 ND 93, ¶ 8, 626 N.W.2d 698 (stating this Court has consistently required employees to exhaust available administrative remedies prior to pursuing a claim in court); *Long v. Samson,* 1997 ND 174, ¶ 14, 568 N.W.2d 602 (holding a discharged university employee failed to exhaust administrative remedies and therefore was precluded from raising those claims); *Peterson v. North Dakota Univ. Sys.,* 2004 ND 82, ¶ 14, 678 N.W.2d 163 (stating a dismissed faculty member was required to exhaust administrative remedies before bringing an action in district court); *Transp. Div. of the Fargo Chamber of Commerce v. Sandstrom,* 337 N.W.2d 160, 162–63 (N.D.1983) (affirming district court's dismissal of action for failure to exhaust administrative remedies because appellant did not follow the statutorily mandated procedures for challenging a rate increase before suing in court).

[¶ 10] In *Soentgen,* we stated:

[A]n exhaustion of remedies requirement serves the salutary function of eliminating or mitigating damages. If an organization is given the opportunity quickly to determine through the operation of its internal procedures that it has committed error, it may be able to minimize, and sometimes eliminate, any monetary injury to the plaintiff by immediately reversing its initial decision and affording the aggrieved party all membership rights; an individual should not be permitted to increase damages by foregoing available internal remedies. . . .

Moreover, by insisting upon exhaustion even in these circumstances, courts accord recognition to the 'expertise' of the organization's quasi-judicial tribunal, permitting it to adjudicate the merits of the plaintiff's claim in the first in-

stance.... Finally, even if the absence of an internal damage remedy makes ultimate resort to the courts inevitable ... the prior administrative proceeding will still promote judicial efficiency by unearthing the relevant evidence and by providing a record which the court may review.

*Soentgen,* 467 N.W.2d at 82 (quoting *Westlake Cmty. Hosp. v. Sup.Ct. of Los Angeles County,* 17 Cal.3d 465, 131 Cal.Rptr. 90, 551 P.2d 410, 416 (1976)).

[¶ 11] "The purpose of requiring exhaustion of remedies has its basis in the separation of powers doctrine." *Tracy v. Central Cass Pub. Sch. Dist.,* 1998 ND 12, ¶ 14, 574 N.W.2d 781; *see State ex rel. Spaeth v. Meiers,* 403 N.W.2d 392, 394 (N.D.1987) (interpreting article XI, section 26, of the North Dakota Constitution as recognizing separation of powers).

[¶ 12] Requiring exhaustion of remedies under the separation of powers doctrine is particularly appropriate in this case, where the North Dakota Constitution grants the State Board of Higher Education full authority to control and administer the State's higher education institutions. N.D. Const. art. VIII, § 6. With full authority to control and administer the State's higher education institutions comes the authority to award academic degrees. *See id.* (granting the State Board of Higher Education "full authority over the institutions under its control" and authority to "do each and everything necessary and proper for the" administration of those institutions). The authority to award academic degrees naturally comes with the implied authority to revoke an improperly awarded degree upon good cause and a fair hearing. 14A C.J.S. *Colleges and Universities* § 41 (1991); 15A Am.Jur.2d *Colleges and Universities* § 29 (2000); *See also Waliga v. Bd. of Trustees of Kent St. Univ.,* 22 Ohio St.3d 55, 488 N.E.2d 850,

852 (1986) (holding it is self-evident a university has inherent authority to revoke an improperly awarded degree under university's granted authority to take any action necessary to maintain university).

[¶ 13] Although we have applied the exhaustion of remedies doctrine most frequently in an employment law context, the doctrine appropriately applies to a grievance between a student and a university and the student is subject to the university's written code providing internal procedures for handling such grievances. UND's written policies provided Brown with an administrative remedy that allowed for a hearing and appeal process before the decision to revoke Brown's academic degree would be made final. Brown did not exhaust the administrative remedies available to him before filing a complaint in the district court.

[¶ 14] Brown argues he should not be required to exhaust the administrative remedies because exhaustion would have been futile since Dean Benoit had already decided to revoke Brown's degree before the hearing was held. Dean Benoit's letter to Brown announced the Dean's decision to revoke the degree but also indicated the appeal process was available. Dean Benoit attached the appeal procedure to the letter.

[¶ 15] This Court's previous decisions have rejected arguments similar to Brown's and, like those cases, this case requires exhaustion of administrative remedies for a variety of similar reasons. The Graduate Committee decided to uphold the recommendation to revoke Brown's degree, but, because Brown decided not to participate, that decision was made without Brown's view of the event leading to the revocation. Indeed, if Brown has a defense to the charges of plagiarism, he has yet to present it and, if he has a

defense, it is speculation to conclude that the Graduate Committee would have taken the action to revoke his degree had it heard Brown's evidence.

[¶ 16] Furthermore, there is reason to conclude the administrative process, here as in the other cases, would promote judicial efficiency by unearthing the relevant evidence, sharpen the issues, retain the possibility of avoiding judicial proceedings, provide a record which a court may ultimately review if the issue is still not fully resolved upon exhaustion of the administrative remedies, and provide the opportunity to eliminate or mitigate damages early in the dispute. *Schuck v. Montefiore Pub. Sch. Dist. No. 1*, 2001 ND 93, 626 N.W.2d 698; *Long v. Samson*, 1997 ND 174, 568 N.W.2d 602; *Tracy v. Central Cass Pub. Sch. Dist.*, 1998 ND 12, 574 N.W.2d 781. Brown had a plainly stated administrative remedy available to him. *Frank v. Traynor*, 1999 ND 183, ¶ 13, 600 N.W.2d 516. Failure to exhaust administrative remedies precludes Brown from making a claim in court and, as a result, the district court was without jurisdiction to hear Brown's complaint.

### III

[¶ 17] The judgment dismissing Brown's complaint is affirmed.

[¶ 18] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.