2016 ND 104

**Sarah VOGEL, individually and for all those similarly situated, Plaintiff and Appellant**

v.

**MARATHON OIL COMPANY, an Ohio Corporation, Defendant and Appellee.**

**No. 20150154.**

Supreme Court of North Dakota.

May 31, 2016.

472

Stephen D. Easton (argued), Laramie, Wyo.; Derrick L. Braaten (appeared) and JJ William England (on brief), Bismarck, N.D.; Cody L. Balzer (appeared), Loveland, Colo.; and Matthew J. Kelly (on brief), Bozeman, Mont., for plaintiff and appellant.

John W. Morrison Jr. (argued), Bismarck, N.D., and Adrian A. Miller, Billings, Mont., for defendant and appellee.

Hope L. Hogan, Office of the Attorney General, Bismarck, N.D., for amicus curiae State of North Dakota.

McEVERS, Justice.

[¶ 1]   Sarah Vogel appeals from a district court judgment dismissing without prejudice her complaint against Marathon Oil Company.   Vogel argues her claims should not be dismissed because she has a private right of action for violations of the statute restricting the flaring of gas produced with crude oil from an oil well, N.D.C.C. § 38–08–06.4, and she was not required to exhaust administrative remedies.   We affirm.

I

[¶ 2]   Marathon operates the Elk USA 11–17H well in Mountrail County.   The well began producing hydrocarbons in 2011 and continued producing through at least January 2014.   Vogel owns mineral interests and has received royalties from the oil or gas produced and sold from the well.

[¶ 3]   In October 2013, Vogel, individually and on behalf of those similarly situated, sued Marathon seeking declaratory relief as well as money damages for failure to pay royalties on flared gas.   Vogel alleged Marathon flared all or some of the

gas produced from the well, some of the gas was flared in violation of N.D.C.C. § 38–08–06.4, Marathon owes royalties on the value of the flared gas, and she is entitled to sue for and recover damages under N.D.C.C. § 38–08–06.4. Vogel also sought damages for common law claims of conversion and waste. Vogel also requested class certification, alleging Marathon failed to pay royalties for flared gas on 29 wells and claiming the class includes over 100 similarly situated royalty owners. Vogel later amended her complaint, alleging she also has a private right of action under the Environmental Law Enforcement Act ("ELEA"), N.D.C.C. ch. 32–40, to enforce payment of royalties attributable to gas flared in violation of N.D.C.C. § 38–08–06.4.

[¶ 4] Marathon answered and subsequently moved to dismiss Vogel's complaint under N.D.R.Civ.P. 12(b)(1) and (6) for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. Marathon argued the complaint should be dismissed for failure to state a valid claim because N.D.C.C. § 38–08–06.4 does not expressly provide for a private right of action for damages based on a violation of the statute, there is no implied private right of action for damages under N.D.C.C. § 38–08–06.4, the ELEA does not create a private right of action for a violation of N.D.C.C. § 38–08–06.4, and N.D.C.C. ch. 38–08 provides the exclusive remedy for alleged improper flaring preempting any common law claims for conversion and waste. Marathon also argued the district court lacked subject matter jurisdiction and Vogel's claims should be dismissed because the North Dakota Industrial Commission has exclusive jurisdiction over the matter and Vogel failed to exhaust her administrative remedies. Vogel opposed Marathon's motion.

[¶ 5] After a hearing, the district court granted Marathon's motion to dismiss. The court stated N.D.C.C. ch. 38–08 provides the Industrial Commission with very broad authority to regulate and administer oil and gas related activities in this state, N.D.C.C. ch. 38–08 exclusively provides the remedies Vogel seeks, and Vogel did not exhaust her administrative remedies. The court concluded N.D.C.C. § 38–08–06.4 does not provide an express or implied private right of action, the ELEA does not provide a private right of action but may provide a cumulative remedy if the Industrial Commission fails or refuses to act and the administrative remedies are exhausted, and N.D.C.C. § 38–08–06.4 is the controlling law and provides all of the remedies for flaring. The court concluded it did not have subject-matter jurisdiction because Vogel did not exhaust her administrative remedies, and she did not state a claim for which relief can be granted. A judgment dismissing Vogel's complaint without prejudice was entered.

II

[¶ 6] Vogel argues the judgment dismissing her complaint without prejudice is appealable. Marathon does not dispute that the judgment is appealable. A dismissal without prejudice generally is not appealable, but it may be final and appealable if it has the practical effect of terminating the litigation in the plaintiff's chosen forum. *Rolette Cty. Soc. Serv. Bd. v. B.E.*, 2005 ND 101, ¶ 4, 697 N.W.2d 333. The judgment requires Vogel to pursue her administrative remedies and terminates her attempt to seek damages through the courts individually and as a class action. The judgment has the practical effect of terminating the litigation in Vogel's chosen forum. We conclude the judgment in this case is appealable.

## III

[¶ 7] A claim may be dismissed for lack of subject-matter jurisdiction under N.D.R.Civ.P. 12(b)(1). Generally, dismissal for lack of subject matter jurisdiction is appropriate if the plaintiff failed to exhaust administrative remedies. *Thompson v. Peterson*, 546 N.W.2d 856, 861 (N.D. 1996). A dismissal for lack of subject-matter jurisdiction will be reviewed de novo on appeal if the jurisdictional facts are not disputed. *Id.* at 860.

[¶ 8] A motion to dismiss for failure to state a claim under N.D.R.Civ.P. 12(b)(6) tests the legal sufficiency of the claim presented in the complaint. *In re Estate of Nelson*, 2015 ND 122, ¶ 5, 863 N.W.2d 521. We review a dismissal under N.D.R.Civ.P. 12(b)(6) de novo on appeal, *Nelson*, at ¶ 5. We construe the complaint in the light most favorable to the plaintiff and accept the well-pleaded allegations as true. *Id.*

## IV

[¶ 9] Vogel argues her claims under N.D.C.C. § 38-08-06.4 should not be dismissed because there is an implied private right of action for damages under the statute. She contends producers are liable to mineral owners for royalties on the value of gas flared in violation of N.D.C.C. § 38-08-06.4 and the statute provides mineral owners with a right to recover damages when royalties are not paid.

[¶ 10] Section 38-08-06.4, N.D.C.C., provides restrictions on the flaring of gas from an oil well, stating:

1. As permitted under rules of the industrial commission, gas produced with crude oil from an oil well may be flared during a one-year period from the date of first production from the well.

2. After the time period in subsection 1, flaring of gas from the well must cease. . . .

. . . .

4. For a well operated in violation of this section, the producer shall pay royalties to royalty owners upon the value of the flared gas and shall also pay gross production tax on the flared gas at the rate imposed under section 57-51-02.2.

5. The industrial commission may enforce this section and, for each well operator found to be in violation of the section, may determine the value of flared gas for purposes of payment of royalties under this section and its determination is final.

6. A producer may obtain an exemption from this section from the industrial commission upon application. . . .

[¶ 11] Although N.D.C.C. § 38-08-06.4(4) states a producer shall pay royalties to royalty owners upon the value of the gas flared in violation of the statute, N.D.C.C. ch. 38-08 does not expressly provide a private right of action for damages for a violation of N.D.C.C. § 38-08-06.4. Vogel argues the statute implies a private right of action, allowing a royalty owner to bring suit in district court seeking damages for unpaid royalties.

[¶ 12] Three factors are applied to determine whether a private right of action should be implied under a statute:

(1) [W]hether the plaintiff is one of the class for whose special benefit the statute was enacted; (2) whether there is an indication of legislative intent, explicit or implicit, either to create such remedy or to deny one; and (3) whether it is consistent with the underlying purposes of

the legislative scheme to imply such a remedy for the plaintiff.

*Empower the Taxpayer v. Fong*, 2012 ND 119, ¶ 4, 817 N.W.2d 381 (quoting *Ernst v. Burdick*, 2004 ND 181, ¶ 11, 687 N.W.2d 473). Whether a statute creates a private right of action is a question of legislative intent. *Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc.*, 2001 ND 116, ¶ 13, 628 N.W.2d 707. "The 'ultimate issue' is whether the legislature intended to create a particular cause of action, and 'unless this [legislative] intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist.'" *Id.* at ¶ 13 (quoting *Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988)). "The legislature's silence in failing to expressly provide a private right of action is a strong indication it did not intend such a remedy." *Trade 'N Post*, at ¶ 14. The party arguing an implied right of action exists bears the burden of proof to establish the legislature intended to create the remedy. *Id.* at ¶ 14. Vogel has the burden of proving the legislature intended to create a private right of action for damages under N.D.C.C. § 38–08–06.4, through the language and focus of the statute, the legislative history, or the statutory purpose. *See Trade 'N Post*, at ¶ 14.

[¶ 13] Vogel contends she is a member of the class for whose special benefit N.D.C.C. § 38–08–06.4 was enacted and she meets the first factor of the three-part test. Marathon conceded in its brief that Vogel may be a member of the class. Vogel owns mineral interests from which oil and gas were produced, and therefore she appears to be a member of the class for whose benefit the statute was enacted. However, that is only one factor, and Vogel must establish the legislature intended to create a private right of action. *See*

*Trade 'N Post*, 2001 ND 116, ¶ 15, 628 N.W.2d 707.

[¶ 14] There is nothing in the plain language of N.D.C.C. ch. 38–08 indicating the legislature intended to provide a private right of action for damages for violations of N.D.C.C. § 38–08–06.4. Rather, N.D.C.C. ch. 38–08 contains a comprehensive regulatory scheme providing an administrative remedy for a violation of N.D.C.C. § 38–08–06.4.

[¶ 15] Under the plain language of N.D.C.C. § 38–08–06.4(1), (2), and (6), an operator is permitted to flare gas produced with crude oil from a well for one year from the date of first production from the well, and after that time flaring must cease, unless the operator receives an exemption from the Industrial Commission. If a well is operated in violation of N.D.C.C. § 38–08–06.4, the producer is required to pay royalties to royalty owners upon the value of the flared gas and pay taxes on the flared gas. N.D.C.C. § 38–08–06.4(4). The statute also provides, "The industrial commission may enforce this section and, for each well operator found to be in violation of this section, may determine the value of flared gas for purposes of payment of royalties under this section and its determination is final." N.D.C.C. § 38–08–06.4(5). The Industrial Commission "has continuing jurisdiction and authority over all persons and property, public and private, necessary to enforce effectively the provisions of [N.D.C.C. ch. 38–08]." N.D.C.C. § 38–08–04. Chapter 38–08, N.D.C.C., authorizes an interested person to petition the commission to act, the commission is required to set a hearing and give notice if there is a petition, and it is required to enter an order within thirty days after the hearing. N.D.C.C. § 38–08–11(4). Any party adversely affected by an order of the Industrial Commission may

request reconsideration or may appeal the order to the district court. N.D.C.C. §§ 38–08–13 and 38–08–14.

[¶ 16] A royalty owner may petition the Industrial Commission for a determination of royalties on gas flared in violation of N.D.C.C. § 38–08–06.4. N.D.C.C. § 38–08–11(4). If a royalty owner files a petition, the Industrial Commission is required to set a date for a hearing and give notice and must enter an order within thirty days after a hearing. *Id.* If the royalty owner is adversely affected by the Industrial Commission's order, they may apply for reconsideration or appeal to the district court. N.D.C.C. §§ 38–08–13 and 38–08–14. Chapter 38–08, N.D.C.C., includes a comprehensive regulatory scheme and gives royalty owners an administrative remedy for violations of N.D.C.C. § 38–08–06.4.

[¶ 17] A statute expressly including a comprehensive regulatory scheme is a strong indication the legislature did not intend to provide other remedies. *Trade 'N Post*, 2001 ND 116, ¶ 17, 628 N.W.2d 707. In other cases where a statute has expressly included a comprehensive regulatory scheme, we have explained:

> The structure of these statutes similarly counsels against recognition of an implied right of action in this case. The language of the statutes entrusts enforcement of the statutory requirements to the appropriate [regulatory] agencies.... The comprehensive character of a remedial scheme expressly fashioned by [the legislature] strongly evidences an intent not to authorize other remedies. It is not within the competence of the judiciary to amend these comprehensive enforcement schemes by adding to them another private remedy not authorized nor intended by [the legislature].

*Id.* (quoting *R.B.J. Apartments, Inc. v. Gate City Sav. & Loan Ass'n*, 315 N.W.2d 284, 288–89 (N.D.1982)). The legislature did not create a right under N.D.C.C. § 38–08–06.4 without providing an enforcement mechanism; rather, it provided an administrative remedy. The chapter's comprehensive regulatory scheme is a strong indication the legislature did not intend to provide a private right of action for damages under N.D.C.C. § 38–08–06.4.

[¶ 18] In contrast, N.D.C.C. § 38–08–17(2) expressly provides for a private right of action for *injunctive relief*:

> If the commission fails to bring a suit to enjoin a violation or threatened violation of any provision of this chapter ... within ten days after receipt of written request to do so by any person who is or will be adversely affected by such violation, the person making such request may bring suit in the person's own behalf to restrain such violation or threatened violation in any court in which the commission might have brought suit.

We have said the legislature clearly expresses its intent not to create a private right of action for damages when a statute expressly provides a private right of action for injunctive relief and does not include a private right of action for damages. *Trade 'N Post*, 2001 ND 116, ¶ 20, 628 N.W.2d 707.

[¶ 19] The legislative history of N.D.C.C. § 38–08–06.4 also does not support Vogel's claim of a private right of action for damages. Representative Ron Anderson, who sponsored the 1985 bill which enacted N.D.C.C. § 38–08–06.4, testified:

> This bill has to do with a limit on the flaring of gas at crude oil producing wells. The federal government already requires royalties to be paid on flared gas at well sites. After one year if the well has not been hooked up to a natural

gas line the producer can do one of three things: 1) He can stop well production; 2) He can continue production if he pays a tax and royalties to the land owner; or 3) he can obtain an exemption from the Industrial Commission. *This gives the Industrial Commission the ability to charge a tax or require royalties to be paid to the land owner.* *Hearing on H.B. 1521 Before the Senate Nat. Res. Comm.,* 49th N.D. Legis. Sess. (Feb. 21, 1985) (testimony of Rep. Ron Anderson) (emphasis added) ["*Hearing on H.B. 1521* "]. This legislative history indicates the legislature intended the Industrial Commission would determine whether royalties are required to be paid to the royalty owner and does not contemplate the courts would make that determination.

[¶ 20] The legislative history for subsequent amendments to the statute also does not support Vogel's interpretation of the statute. When N.D.C.C. § 38–08–06.4 was enacted in 1985, it stated, "The industrial commission shall enforce this section and, for each well operator found to be in violation of this section, shall determine the value of flared gas for purposes of payment of . . . royalties under this section and its determination is final." 1985 N.D. Sess. Laws ch. 401. In 1993, the legislature amended the statute, and removed the word "shall" from this provision and replaced it with the word "may." 1993 N.D. Sess. Laws ch. 368, § 1. Vogel contends the amendment means the Industrial Commission has discretion in deciding whether it will enforce N.D.C.C. § 38–08–06.4 and the presence of any administrative remedy is "illusory." The legislative committee hearings on the 1993 amendment included testimony that every well was required to go through the hearing process to get an exemption under the prior version of the statute, there were some geographic areas where there were no gas lines and an exemption was re-

quired because it was not economically feasible to build a pipeline, and a hearing would be held even though an exemption was required. *Hearing on S.B. 2342 Before the Senate Nat. Res. Comm.,* 53rd N.D. Legis. Sess. (Jan. 29, 1993) (testimony of Lowell Ridgeway, ND Petroleum Council, and Wes Norton, Industrial Commission) ["*Hearing on S.B. 2342 Before Senate* "]; *Hearing on S.B. 2342 Before the House Nat. Res. Comm.,* 53rd N.D. Legis. Sess. (Feb. 26, 1993) (testimony of Norton) ["*Hearing on S.B. 2342 Before House* "]. Testimony indicated the amendment to the statute would provide the Industrial Commission with discretionary authority to determine whether a hearing should be held and an operator should be required to demonstrate why a line was not being built, and the amendment would give the Industrial Commission more flexibility and would reduce the Commission's workload. *Hearing on S.B. 2342 Before Senate, supra* (testimony of Ridgeway and Norton); *Hearing on S.B. 2342 Before House, supra* (testimony of Norton). The chapter still requires the Industrial Commission to act if an interested person files a petition. *See* N.D.C.C. § 38–08–11(4). The legislative history does not support Vogel's claim that the administrative remedy is "illusory" and that a private right of action for damages is implied.

[¶ 21] Vogel has not established the legislature intended to create a private right of action for damages, and therefore we need not address the third factor to determine whether a private right of action is consistent with the statutory scheme. *See Empower the Taxpayer,* 2012 ND 119, ¶ 5, 817 N.W.2d 381. We conclude there is not an implied private right of action for damages under N.D.C.C. § 38–08–06.4 and the district court did not err in dismissing Vogel's claims.

## V

[¶ 22] Vogel argues the district court erred in dismissing her claim for damages under the Environmental Law Enforcement Act of 1975, N.D.C.C. ch. 32–40. She claims the ELEA provides a private right of action to enforce N.D.C.C. § 38–08–06.4.

[¶ 23] The ELEA was enacted to provide relief to a person aggrieved by another's failure to abide by or enforce the state's environmental laws. N.D.C.C. § 32–40–02. Section 32–40–06, N.D.C.C., authorizes an action for the violation of any environmental statute or rule:

> [A]ny person . . . aggrieved by the violation of any environmental statute, rule, or regulation of this state may bring an action in the appropriate district court, either to enforce such statute, rule, or regulation, or to recover any damages that have occurred as a result of the violation, or for both such enforcement and damages. Such action may be brought against any person, state agency, or county, city, township, or other political subdivision allegedly engaged in such violation.

"Aggrieved" for purposes of the ELEA means "the suffering of an injury in fact as a result of the alleged violation of a statute, rule, or regulation, and the injury is of the type the statute, rule, or regulation in question was intended to regulate or protect against." N.D.C.C. § 32–40–03(1). In an action brought under the ELEA, the district court may grant the relief specified in the environmental statute allegedly violated, grant equitable relief, award damages, or enter any order it deems necessary to enforce compliance with the environmental statute. N.D.C.C. § 32–40–11.

[¶ 24] The ELEA provides a private right of action for a person aggrieved by an alleged violation of an environmental statute. An environmental statute is "any statute . . . for the protection of the air, water, and other natural resources, including land, minerals, and wildlife, from pollution, impairment, or destruction." N.D.C.C. § 32–40–03(2). Vogel contends N.D.C.C. § 38–08–06.4 is an environmental statute as defined by the ELEA. We agree. Oil and gas are generally classified as minerals. *See State ex rel. Rausch v. Amerada Petroleum Corp.*, 78 N.D. 247, 251, 49 N.W.2d 14, 17 (1951); *see also* Mineral, *Black's Law Dictionary* (10th ed.2014) ("1. Any natural inorganic matter that has a definite chemical composition and specific physical properties that give it value . . .; 2. A subsurface material that is explored for, mined, and exploited for its useful properties and commercial value"). One of the purposes of N.D.C.C. ch. 38–08 is to protect minerals by preventing the waste of oil and gas, which includes the unnecessary destruction of oil or gas. *See* N.D.C.C. §§ 38–08–01, 38–08–02(19), and 38–08–03. Section 38–08–06.4, N.D.C.C., limits the flaring of gas, protecting air from pollution and protecting minerals by preventing the unnecessary destruction or waste of gas. *See Hearing on H.B. 1134 Before the Sen. Nat. Res. Comm.*, 63rd N.D. Legis. Sess. (Mar. 8, 2013) (Testimony of Rep. Todd Porter) (testified about the concern that there is a waste of the resource and the goal is to put it to a beneficial use); *Hearing on S.B. 2413 Before the House Fin. And Taxation Comm.*, 61st N.D. Legis. Sess. (March 4, 2009) (testimony of Rep. Frank Wald) (limiting flaring is good for the environment); *Hearing on H.B. 1521, supra* (testimony of Dana K. Mount, Dir. of Envtl. Engineering at the Dep't of Health); *Hearing on H.B. 1521, supra* (testimony of Rose Sickler, Chair of Dakota Res. Council). Section 38–08–06.4, N.D.C.C., is an environmental statute for purposes of the ELEA.

[¶ 25] Although the ELEA may provide a private right of action for a violation of N.D.C.C. § 38–08–06.4, any remedies the ELEA provides are cumulative and do not replace statutory or common law remedies. *See* N.D.C.C. § 32–40–04. Section 32–40–04, N.D.C.C., explicitly states the ELEA does not replace statutory remedies. *See also Hearing on H.B. 1059 Before the House Judiciary Comm.*, 44th N.D. Legis. Sess. (Jan. 20, 1975) (testimony of Prof. Robert Beck stating the bill would allow parties to bring a lawsuit to enforce current environmental law but the law was not intended to "do away" with existing remedies a person may already have). If a party is allowed to bring a judicial action for a violation of N.D.C.C. § 38–08–06.4 before they pursue the administrative remedies provided by the statute, the ELEA will replace the statutory remedy. Pursuing the administrative remedies under N.D.C.C. ch. 38–08 should resolve any claim a royalty owner may have for royalties for a violation of N.D.C.C. § 38–08–06.4. However, the ELEA provides a cumulative remedy and any remedy it provides may be pursued if the Industrial Commission fails or refuses to act when the administrative remedies are pursued.

[¶ 26] Furthermore, when a general statutory provision conflicts with a special statutory provision, the two statutes must be construed to give effect to both provisions if possible, but if the conflict is irreconcilable, the special statutory provision must prevail and must be construed as an exception to the general provision. N.D.C.C. § 1–02–07. To the extent the ELEA and N.D.C.C. § 38–08–06.4 conflict, they can be construed to give effect to both. The ELEA provides a cumulative remedy that may be pursued if the Industrial Commission fails or refuses to act.

[¶ 27] A 1977 Attorney General's opinion about the ELEA is consistent with our interpretation, stating:

> With regard to the Environmental Law Enforcement Act of 1975, ... this Act provides a procedural remedy by which an "aggrieved" plaintiff may directly enforce environmental statutes and regulations otherwise enforceable by state agencies charged with their enforcement. The Act grants jurisdiction to the court to enforce, by private lawsuit, laws and regulations which otherwise may be enforceable only by the state agency.

N.D. Att'y Gen. Op. 77–40. "Attorney General opinions are not binding upon this court and we will not follow them if they are inconsistent with the statutory interpretation that the court deems reasonable." *Sorum v. Dalrymple*, 2014 ND 233, ¶ 10, 857 N.W.2d 96 (quoting *Sauby v. City of Fargo*, 2008 ND 60, ¶ 12, 747 N.W.2d 65). The Attorney General interpreted the provisions of the ELEA and determined an aggrieved person may bring a private action to enforce an environmental statute, which otherwise is enforceable only by the state agency. In this case, N.D.C.C. ch. 38–08 authorizes an interested person to petition the Industrial Commission pursuing administrative remedies or bring suit to enjoin an alleged violation. The provisions of N.D.C.C. ch. 38–08 are not enforceable only by the state agency and the administrative remedies must be pursued before an "aggrieved person" may bring a private action under the ELEA. The Attorney General's interpretation is not inconsistent with our interpretation.

[¶ 28] Chapter 38–08, N.D.C.C., provides an administrative remedy for a royalty owner to pursue if there is a violation of N.D.C.C. § 38–08–06.4 and that remedy must be pursued before pursuing a private action as an "aggrieved person"

under the ELEA. The ELEA provides a cumulative remedy that is available if the Industrial Commission fails or refuses to act. We conclude the district court properly determined the ELEA may provide a cumulative remedy if the Industrial Commission fails or refuses to act.

## VI

[¶ 29] Vogel argues the district court erred in dismissing her common law claims for conversion and waste. She contends the common law claims are complementary remedies and do not conflict with N.D.C.C. § 38–08–06.4.

[¶ 30] The law of this state is expressed by various sources, including statutes and common law. N.D.C.C. § 1–01–03. This Court has said, "The common law is therefore adopted by statute as the basic law applicable to civil rights and remedies not defined by the statute. Where there is no express constitutional or statutory declaration upon the subject the common law is applied." *Tarpo v. Bowman Pub. Sch. Dist. No. 1*, 232 N.W.2d 67, 70 (N.D.1975) (quoting *McLaughlin Oil Co. v. First State Bank of Buffalo*, 79 N.D. 525, 57 N.W.2d 860, 864 (1953)) (citations omitted). "In this state there is no common law in any case in which the law is declared by the code." N.D.C.C. § 1–01–06. In construing N.D.C.C. § 1–01–06, this Court has said statutory enactments take precedence over and govern conflicting common law doctrines. *Finstad v. Ransom–Sargent Water Users, Inc.*, 2014 ND 146, ¶ 12, 849 N.W.2d 165; *Vandall v. Trinity Hosp.*, 2004 ND 47, ¶ 14, 676 N.W.2d 88. "[I]f a particular statute is so designed that it covers the entire field to which it relates, it does so to the exclusion of the common law." *In re White*, 69 N.D. 61, 284 N.W. 357, 358 (1939). However, we have also said the common law remains relevant when there is no conflict between the statutory and common law. *Rassier v. Houim*, 488 N.W.2d 635, 636 (N.D.1992).

[¶ 31] Vogel's common law claims of conversion and waste are based on her assertion that she is entitled to royalties for flared gas and include a request for damages for unpaid royalties on gas flared after production began, including royalties on gas flared during the first year of production. Conversion is the tortious detention or destruction of personal property, or a wrongful exercise of control over the property of another inconsistent with or in defiance of the property owner's rights. *Ritter, Laber and Assoc., Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 11, 680 N.W.2d 634; *see also Great Am. Ins. Co. v. Am. State Bank of Dickinson*, 385 N.W.2d 460, 462 (N.D.1986). Under the common law doctrine of waste, this Court has said that "[w]aste may be defined as an unreasonable or improper use, abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession, which results in a substantial injury." *Meyer v. Hansen*, 373 N.W.2d 392, 395 (N.D.1985).

[¶ 32] Section 38–08–06.4, N.D.C.C., provides royalty owners with a right to receive royalties on flared gas, but that right is limited to flaring that violates the statute. *See* N.D.C.C. § 38–08–06.4(4). The plain language of N.D.C.C. § 38–08–06.4(4) states a producer must pay royalties on gas flared in violation of the statute. The legislature created a statutory right to royalties on flared gas, but limited the right to royalties for gas flared in violation of the statute. Chapter 38–08, N.D.C.C., also provides a remedy for a royalty owner when gas is flared in violation of N.D.C.C. § 38–08–06.4, replacing common law claims for royalties on flared gas. Section 38–08–06.4, N.D.C.C., is designed to cover the entire field relating to royalties for flared gas.

[¶ 33] Furthermore, the statutory and common law conflict. Vogel requested damages for her common law conversion claim of unpaid royalties for gas flared during the first year of production. Section 38–08–06.4(1), N.D.C.C., authorizes a producer to flare gas produced with crude oil from an oil well during a one-year period from the date of first production from the well and does not require the producer pay royalties on the flared gas. Section 38–08–06.4, N.D.C.C., conflicts with any right royalty owners previously had under the common law for royalties on flared gas. "There cannot be two rules of law on the same subject contradicting each other," and the statute prevails when the statutory provisions differ from previous case law. *Finstad*, 2014 ND 146, ¶ 12, 849 N.W.2d 165 (quoting *Bornsen v. Pragotrade, LLC*, 2011 ND 183, ¶ 15, 804 N.W.2d 55); *see also Vandall*, 2004 ND 47, ¶ 15, 676 N.W.2d 88.

[¶ 34] Vogel's common law claims seek damages for unpaid royalties on flared gas. Section 38–08–06.4, N.D.C.C., regulates the flaring of gas from oil wells, gives royalty owners a right to royalties for gas flared in violation of the statute, and provides a remedy when the statute is violated. Because two contradictory rules of law on the same subject are precluded, we conclude N.D.C.C. § 38–08–06.4 governs any claim for royalties for flared gas. The district court did not err in concluding Vogel's common law claims should be dismissed.

## VII

[¶ 35] Vogel argues the district court erred in ruling she was required to exhaust administrative remedies before she could pursue any of her claims in court. She contends she may choose the forum for relief because she has a private right of action.

[¶ 36] This Court has "consistently required the exhaustion of remedies before the appropriate administrative agency as a prerequisite to making a claim in court." *Brown v. State ex rel. State Bd. of Higher Educ.*, 2006 ND 60, ¶ 8, 711 N.W.2d 194. A party's failure to exhaust administrative remedies will generally preclude making a claim in court. *Id.* The purpose of the exhaustion requirement has its basis in the separation of powers doctrine. *Tracy v. Cent. Cass Pub. Sch. Dist.*, 1998 ND 12, ¶ 14, 574 N.W.2d 781. The requirement preserves agency authority and promotes judicial efficiency. *Medcenter One, Inc. v. N.D. State Bd. of Pharmacy*, 1997 ND 54, ¶ 11, 561 N.W.2d 634. The requirement recognizes the agency's initial decision-making responsibility and allows the agency to use its particular expertise in resolving the dispute. *See id.; Tracy*, at ¶ 14. It "encourages administrative decision makers to explain the basis for their decisions and perhaps, most important, provides courts with the benefit of their expertise in such matters in the event of judicial review." *Med. Arts Clinic, P.C. v. Franciscan Initiatives, Inc.*, 531 N.W.2d 289, 295 (N.D.1995). The requirement provides an opportunity for the matter to be settled and avoid judicial review. *Tracy*, at ¶ 14. The court's review of the matter is aided by the agency's findings, conclusions, and record if the case makes its way into the court system. *Id.*

[¶ 37] The exhaustion requirement, however, does have several recognized exceptions, including when exhaustion would be futile or if the case only involves the interpretation of an unambiguous statute. *Kadlec v. Greendale Twp. Bd. of Twp. Supervisors*, 1998 ND 165, ¶ 25, 583 N.W.2d 817. Whether the exhaustion of remedies requirement applies in each case "depends on a mixed bundle of considerations, 'including, but not limit-

ed to, expertise of administrative bodies, statutory interpretation, pure questions of law, constitutional issues, discretionary authority of the courts, primary, concurrent, or exclusive jurisdiction, inadequacies of administrative bodies, etc.'" *Id.* (quoting *Shark Bros., Inc. v. Cass Cty.*, 256 N.W.2d 701, 705 (N.D.1977)).

[¶ 38] Citing *Werlinger v. Champion Healthcare Corp.*, 1999 ND 173, 598 N.W.2d 820, Vogel argues she is not required to exhaust administrative remedies before pursuing her claims in court because she has a private right of action and she is entitled to choose which remedy to pursue.

[¶ 39] In *Werlinger*, 1999 ND 173, ¶¶ 1–2, 56, 598 N.W.2d 820, this Court reviewed a district court decision granting class certification under N.D.R.Civ.P. 23 in a suit to recover unpaid wages and overtime, liquidated damages, attorneys' fees, and other costs. This Court considered that the Wage Collection Act provided administrative remedies through the Department of Labor, but held the Act also provides an implied private right of action in addition to the administrative remedy, a private right of action was within the statutory scheme, and an individual has the option to proceed either by way of a private right of action or by way of the administrative scheme under the Act. *Id.* at ¶¶ 42–48.

[¶ 40] This case is different from *Werlinger*. Chapter 38–08, N.D.C.C., does not provide an implied private right of action for a violation of N.D.C.C. § 38–08–06.4; rather, it only provides an administrative remedy. Unlike the statutes at issue in *Werlinger*, the statutory provisions in this case do not provide an individual with a choice of remedies. Vogel is required to exhaust her administrative remedies before pursuing any claims in a court action. This is consistent with our prior case law. *See e.g., Brown*, 2006 ND 60, ¶ 16, 711 N.W.2d 194 (holding degree recipient's failure to exhaust administrative remedies precluded him from making a claim in court); *Tracy*, 1998 ND 12, ¶ 14, 574 N.W.2d 781 (holding teacher's claim for tortious interference with a contract was properly dismissed for lack of subject matter jurisdiction because teacher did not exhaust administrative remedies); *Long v. Samson*, 1997 ND 174, ¶ 14, 568 N.W.2d 602 (holding professor was required to exhaust administrative remedies before bringing suit for contract and tort claims).

[¶ 41] Vogel argues the administrative remedy is inadequate. To the extent she argues an exception to the exhaustion requirement applies, her argument is without merit. Vogel is seeking royalties for the gas flared in violation of N.D.C.C. § 38–08–06.4. Her claims for alleged damages are the type of claim the statute provides an administrative remedy. The Industrial Commission has authority to enforce N.D.C.C. § 38–08–06.4 and determine the value of gas flared in violation for purposes of payment of royalties. N.D.C.C. § 38–08–06.4(5). An interested person may file a petition with the Industrial Commission when he or she believes there is a flaring violation of N.D.C.C. § 38–08–06.4 and royalty owners are entitled to royalties on the flared gas; thereafter, the Industrial Commission is required to fix a date for a hearing, give notice, and enter an order within thirty days of the hearing. *See* N.D.C.C. § 38–08–11(4). A party adversely affected by the Industrial Commission's order may apply for reconsideration or may appeal to the district court. N.D.C.C. §§ 38–08–13 and 38–08–14. The statutes provide an adequate remedy for a royalty owner when gas is flared in violation of N.D.C.C. § 38–08–06.4. Furthermore, the Industrial Commission has expertise in determining whether

there is a violation and determining the value of the gas flared in violation. Pursuing the administrative remedy would likely resolve Vogel's claims.

[¶ 42] Vogel is required to exhaust her administrative remedies prior to pursuing any claims she may have in court. We conclude the district court did not err in dismissing Vogel's claims for lack of subject matter jurisdiction.

## VIII

[¶ 43] We conclude the district court did not err in dismissing Vogel's claims under N.D.R.Civ.P. 12(b)(1) and (6). We affirm the judgment.

[¶ 44] DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.

VANDE WALLE, Chief Justice, concurring in the result.

[¶ 45] I concur in the result reached by the majority opinion. I concur because of the nature of the pleadings in this case and the analysis of whether or not a statute requires exhaustion of administrative remedies and whether or not it creates a private cause of action. However, I am concerned with the precedent this opinion, if read too broadly, may establish for future cases with differently pled facts or different issues, and I write separately to outline those concerns.

[¶ 46] Ordinarily, the obligation for the lessee to pay the lessor royalties is a matter of contract between the lessor and the lessee of the mineral interest, not a matter of statute. *See* N.D.C.C. § 47–16–39.1 ("The obligation arising under an oil and gas lease to pay oil or gas royalties to the mineral owner ... is of the essence in the lease contract, ..."). To that extent, N.D.C.C. § 38–08–06.4 may be read, as we read it in this opinion, to simply create another means by which a lessor may be reimbursed for the nonpayment of royalties for gas produced on the leased premises, in which case the doctrine of exhaustion of remedies applies. That reading also raises the issue of whether or not the statute creates a private cause of action for violation of the statute. Or, the statute might be construed to impose restrictions on the rights of the lessor under the lease relationship. In any event, I believe the statutes should be strictly construed to minimize the interference with that relationship.

[¶ 47] However, the complaint does not allege, and we do not know, whether Marathon Oil is the lessee of the plaintiff's mineral interest or merely the operator of the well for the lessee of the plaintiff's mineral interest. We also do not know whether or not the lessee is obligated under the lease to pay royalties on the flared gas or whether the lease provisions relieve the lessee of the obligation if a statute or regulation allows such flaring. If, but for § 38–08–06.4, an obligation exists to pay royalties under the lease, I would not construe that section to limit the remedies of the lessor by requiring an exhaustion of administrative remedies or to deny a private cause of action for violation of either the statute or the lease. Rather, I would construe the statute to provide an additional remedy to the lessor. For example, under N.D.C.C. § 12.1–32–02, a defendant convicted in a criminal action may be required to pay restitution for damages or restore damaged property in the criminal action, but we have never held that the victim must first seek damages in the criminal proceeding before bringing a civil action to recover those damages.

[¶ 48] A second and related concern is subsection 5 of N.D.C.C. § 38–08–06.4, which states: "The industrial commission *may* enforce this section and, for each well operator found to be in violation of this

section, may determine the value of flared gas for purposes of payment of royalties under this section *and its determination is final.*" (Emphasis added).

[¶ 49] Final as to what? The decision to enforce the section or the value of the flared gas for the purpose of the payment of royalties or both? The majority opinion does not tell us. Furthermore, the majority opinion, citing to N.D.C.C. §§ 38-08-13 and 38-08-14 suggests that the Industrial Commission's decision to enforce or not enforce the provision is appealable. I am not entirely convinced. In the first instance the statute says the Industrial Commission "may enforce" and it also says "its determination is final." Read together it might be said this is not a case in which the lessor may seek enforcement and the payment of royalties through the Industrial Commission and, after exhausting the administrative remedies, if the Commission does not enforce the statute and the payment of royalties, the lessor may bring a private action or at least appeal the Commission's decision. Rather, the statute could be read to mean that the Commission alone makes the final determination as to whether or not to enforce the section as well as to the value of the royalty payment if it determines to enforce the section. To that extent it heightens my concern about the potential interference with the rights of the lessor under the lease and I would caution against a reading of the opinion to conclude that a lessor's exclusive remedy is through the Industrial Commission.

[¶ 50] Although it may be argued that these are issues which, if raised, will be decided in future cases, I am troubled that our decision today will be cited as the basis for the position that N.D.C.C. § 38-08-06.4(5) is the exclusive remedy for lessors or, at the very least, the portal through which all lessors must pass before being

allowed to bring a private cause of action against the lessee for royalties for flared gas under their leases. It should not be cited for that position.

[¶ 51] GERALD W. VANDE WALLE, C.J.

KAPSNER, Justice, dissenting.

[¶ 52] I respectfully dissent. Vogel has asserted a proper cause of action under the Environmental Law Enforcement Act of 1975 ("ELEA"). The majority's holding both frustrates the purpose of the ELEA and disregards its plain language.

[¶ 53] In paragraphs 23 and 24, the majority quotes N.D.C.C. § 32-40-06, which authorizes a person aggrieved by the violation of an environmental statute to bring action in district court and acknowledges that N.D.C.C. § 32-40-03(2) is an environmental statute as defined by the ELEA. However, the majority's holding eviscerates the ELEA by requiring an aggrieved person to first exhaust administrative remedies before bringing an action under the ELEA. This is contrary to the plain language of the statute: "The remedies provided by this chapter shall be cumulative and shall not replace statutory or common-law remedies." N.D.C.C. § 32-40-04. The majority's holding removes the private enforcement power the ELEA was meant to provide.

[¶ 54] The majority holding is also out of step with other jurisdictions' treatment of similar legislation. Other jurisdictions have recognized that environmental protection acts like the ELEA were enacted to ensure enforcement of environmental laws despite inaction or indifference on the part of state agencies.

Michigan's EPA was the first legislation of its kind and has attracted worldwide attention. The act also has served as a model for other states in formulating environmental legislation. The en-

actment of the EPA signals a dramatic *change from the practice where the important task of environmental law enforcement was left to administrative agencies* without the opportunity for participation by individuals or groups of citizens. Not every public agency proved to be diligent and dedicated defenders of the environment. *Ray v. Mason Cnty. Drain Comm'r*, 393 Mich. 294, 224 N.W.2d 883, 887 (1975) (emphasis added).

[¶ 55] In more recent cases, the Michigan Court of Appeals and the Supreme Court of Michigan have specifically held that under Michigan's Environmental Protection Act ("MEPA") exhaustion of administrative remedies is not required before citizens may bring suit. *See Preserve the Dunes, Inc. v. Dep't of Envtl. Quality*, 253 Mich.App. 263, 655 N.W.2d 263 (2002), *rev'd* 471 Mich. 508, 684 N.W.2d 847 (2004). In these cases, the Michigan Court of Appeals and the Supreme Court of Michigan decided a number of issues under MEPA. The Michigan Department of Environmental Quality issued a permit that allowed a private entity to mine sand from sand dunes that were protected under various environmental statutes. 655 N.W.2d at 268–69. A local citizens' group sued the state agency under MEPA for violating the environmental statutes. *Id.*

[¶ 56] The Court of Appeals concluded the citizens could bring an action under MEPA despite not exhausting other administrative remedies available to them: "[T]his Court [has] reiterated the rule that the MEPA provides a *direct* method for enforcing environmental regulations and challenging *an administrative agency's decision without exhausting administrative remedies.* Further, this Court stated that the MEPA is expressly supplementary to other administrative and regulatory procedures provided by law.... It is unnecessary for a party to exhaust administrative remedies before seeking relief under the MEPA." *Preserve the Dunes*, 655 N.W.2d at 271 (emphasis in original) (citations omitted).

[¶ 57] The Court of Appeals also explained that courts should decide environmental issues under MEPA independently of administrative procedures because administrative rules may fall short: "Noting that the MEPA is supplementary to other administrative and regulatory procedures provided by law, the court correctly stated that the MEPA specifically authorizes a court to determine the validity, reasonableness, and applicability of any standard for pollution or pollution control *and* to specify a *new* or *different* pollution control standard if the agency's standard falls short of the substantive requirements of MEPA." *Preserve the Dunes*, 655 N.W.2d at 276 (emphasis in original).

[¶ 58] The Supreme Court of Michigan agreed with these conclusions: "MEPA provides for immediate judicial review of allegedly harmful conduct. The statute does not require exhaustion of administrative remedies before a plaintiff files suit in circuit court." *Preserve the Dunes*, 684 N.W.2d at 850. Michigan's MEPA may be broader than North Dakota's ELEA, because Michigan appears to give the courts the authority to determine the validity of pollution standards whereas the North Dakota Act gives only the authority to enforce environmental laws. However, the underlying principle of providing citizens with an enforcement mechanism for violation of environmental laws is the same. The majority's requirement of exhaustion of administrative remedies will dilute that purpose—particularly if the agency is the impediment or is merely dilatory in its enforcement.

[¶ 59] Minnesota has reached the same conclusion in its application of the Minne-

sota Environmental Rights Act ("MERA"). In *Minnesota ex rel. Swan Lake Area Wildlife Ass'n v. Nicollet Cnty. Bd. of Cnty. Comm'rs,* 711 N.W.2d 522 (Minn.Ct. App.2006), the Minnesota Court of Appeals held individuals may bring suit under MERA without first exhausting administrative remedies. In that case, an environmental association sued a county board over a dispute concerning the construction of a dam. The issue at the center of the litigation—how high to build the dam— was governed by drainage provisions found in Minnesota's state code. The county board argued that "because the drainage authority is the proper arbiter of claims asserted under the drainage code, the district court erred in determining that it had subject matter jurisdiction over a drainage-related claim brought under [MERA]." *Id.* at 523.

[¶ 60] Concluding this was the only issue to be decided on appeal, the Court of Appeals held "that the district court has subject matter jurisdiction over respondent's MERA claim regardless of the administrative processes and remedies available under the drainage provisions of [the state code]." *Swan Lake,* 711 N.W.2d at 525–26. The court interpreted the language of MERA, which stated its remedies "shall be *in addition to* any administrative . . . rights and remedies now or hereafter available" to necessitate this result. *Id.* at 525 (emphasis in original). The court reasoned: "The legislature could have supplied an exception for MERA claims subject to drainage code proceedings. But it did not. And this court cannot supply that which the legislature purposely omits or inadvertently overlooks." *Id. See also Minnesota ex rel. Fort Snelling State Park Ass'n v. Minneapolis Park & Rec. Bd.,* 673 N.W.2d 169, 177 (Minn.Ct.App. 2003) ("this civil action under MERA was authorized regardless of administrative processes").

[¶ 61] To be clear, courts have not interpreted these environmental enforcement statutes to be limitless. The Supreme Court of Minnesota has explained the burden plaintiffs must meet to establish a MERA claim. *See Minnesota ex rel. Schaller v. Cnty. of Blue Earth,* 563 N.W.2d 260, 267 (Minn.1997). The court explained MERA "establish[ed] a private right of action by which any person residing within the state might sue . . . to protect the state's natural resources. . . ." *Id.* at 264 (quoting MERA). It concluded two types of conduct give rise to MERA claims: "(1) any conduct by any person which *violates,* or is *likely to violate,* any environmental quality standard, permit, or similar rule; and (2) any conduct which *materially adversely affects* or is *likely to* materially adversely affect *the environment.*" *Id.* The court instructed the following factors should be considered to determine whether conduct gives rise to a MERA claim.

(1) The quality and severity of any adverse effects of the proposed action on the natural resources affected;

(2) Whether the natural resources affected are rare, unique, endangered, or have historical significance;

(3) Whether the proposed action will have long-term adverse effects on natural resources, including whether the affected resources are easily replaceable (for example, by replanting trees or restocking fish);

(4) Whether the proposed action will have significant consequential effects on other natural resources (for example, whether wildlife will be lost if its habitat is impaired or destroyed);

(5) Whether the affected natural resources are significantly increasing or decreasing in number, considering the

direct and consequential impact of the proposed action.

*Id.* at 267.

[¶ 62] The Minnesota Supreme Court has recognized the environmental statute itself may require some criteria to establish a materially adverse effect on the environment. But burdens extraneous to, and contrary to, the plain language of the ELEA, such as requiring exhaustion of administrative remedies, violate express legislative intent. N.D.C.C. § 32-40-02. This is especially true when the statute contemplates the possibility that a state agency may be a defendant. N.D.C.C. § 32-40-06. To bring an action under the ELEA, a party must have suffered an injury in fact as a result of an alleged violation of an environmental statute, rule, or regulation. The Vogel complaint alleges the necessary elements of a cause of action under the ELEA and § 32-40-06 states the district court is open to her to determine whether she can prove a cause of action.

[¶ 63] Prior to now, this Court has not had occasion to interpret North Dakota's ELEA. The majority's inaugural interpretation here strips the statute of the very purposes the legislature expressed for its enactment. We need only look to the plain language of Chapter 32-40. The ELEA is written to ensure environmental laws are enforced even when state agencies fail to act or are dilatory:

> The legislative assembly of North Dakota enacts this Environmental Law Enforcement Act in recognition of the vital role played by environmental laws in maintaining the health, safety, and general welfare of the state's citizens; the need to maintain a sound system of law, order, and justice; and the need to provide relief to those aggrieved *by a failure of others* to abide by or *enforce* the state's environmental laws."

N.D.C.C. § 32-40-02 (emphasis added). In other words, the legislature has recognized that a violation may exist because of a state agency's failure to enforce the environmental laws it is charged with enforcing. It makes little sense under the ELEA to require the party aggrieved by such dereliction of duty to first exhaust remedies before the agency that may have allowed a violation to persist, especially when that agency may be the agency the plaintiff is suing. Such a requirement defeats the very purpose of the ELEA.

[¶ 64] The majority requires plaintiffs to first utilize the remedy provided in N.D.C.C. § 38-08-06.4 before they may use the remedy the legislature provided when it passed the ELEA. The majority does not base its preferred order of remedies on language in either statute. Rather, it invokes the judicial doctrine of exhaustion of administrative remedies. All the while, the majority calls these remedies "cumulative." The majority supports this conclusion by stating: "If a party is allowed to bring a judicial action for a violation of N.D.C.C. § 38-08-06.4 before they pursue the administrative remedies provided by the statute, the ELEA will replace the statutory remedy." Majority Opinion at ¶ 25. This is simply false, ignores the fact that both remedies are statutorily granted, and confuses the nature of cumulative remedies.

[¶ 65] The existence of the ELEA does nothing to take away the authority of the Industrial Commission, whose authority to act under Chapter 38-08 will still exist. "The remedies provided by [the ELEA] shall be cumulative and shall not replace statutory or common-law remedies." N.D.C.C. § 32-40-04. A cumulative remedy is "[a] remedy available to a party in addition to another remedy that still remains in force." *Black's Law Dictionary*, 1408 (9th ed.2009). We have concluded

cumulative remedies "are not identical and neither the pursuit of one of the available remedies *nor the failure to pursue one will bar an action on the other." Meier v. Novak*, 338 N.W.2d 631, 633 (N.D.1983) (emphasis added).

[¶ 66] It is not clear what the majority suggests by referencing Professor Robert Beck's testimony before the adoption of the ELEA in paragraph 25. Professor Beck is simply stating the nature of a cumulative remedy; that it is intended to be in addition to, and not to take away, an existing remedy. Both continue to exist as this Court recognized in *Meier*, 338 N.W.2d at 633. The cumulative nature of the ELEA is clear from the report of the testimony of David Niss, Attorney, Legislative Council, in Hearing on H.B. 1059 Before the Natural Resources Comm., 44th N.D. Legis. Sess. (1975): "On H.B. 1059 Mr. Niss stated that a person can sue if he can prove (1) damages and if the law is being broken and (2) allows enforcement of environmental laws by citizen-mandamus which allows a citizen to enforce duties owed to the citizens by agencies." A remedy is not cumulative to other remedies if the other remedies must be utilized before it—such a remedy is secondary. The majority ignores this straightforward legal concept and disregards the very reason the ELEA was adopted.

[¶ 67] Shortly after the ELEA was adopted, the attorney general issued an opinion explaining individuals can bring suit under the ELEA to enforce environmental laws that were otherwise enforceable by state agencies: "[T]his Act provides a procedural remedy by which an 'aggrieved' plaintiff may *directly* enforce environmental statutes and regulations otherwise enforceable by state agencies charged with their enforcement. *The Act grants jurisdiction to the court* to enforce, by private lawsuit, laws and regulations which otherwise may be enforceable *only by the state agency."* N.D. Att'y Gen. Op. 1977, 40 (emphasis added).

[¶ 68] It is clear that when the legislature was considering enacting the ELEA, it intended to give enforcement power to citizens because doing so would be beneficial to the state and its environment. The legislature expressly recognized that some lack of enforcement was simply the result of overburdened resources. Professor Beck's testimony focused on how the ELEA would help to remedy this problem:

(1) It permits the Attorney General's office to enforce the various environmental laws that we now have on the books in North Dakota. Under present law the enforcement responsibility is left essentially with our state's attorneys around the state and many of those individuals are part time and already have a heavy load of responsibility. (2) It allows aggrieved persons to bring court actions against those who have violated current North Dakota laws. This bill does not create any new environmental law. The law then goes into some detail to specify the circumstances the bringing of a lawsuit by parties to enforce our present environmental law. There are specific provision[s] as to who may sue, the type of notice that is to be given before suit may be brought, bond requirement, awarding of cost and specific provision of type of relief that a court may grant. This law is not intended to do away with existing remedies that a person may have. We need to take positive action to implement environmental laws already on the books. This is a middle of the road approach because it is between doing nothing and going to the point where a number of states, such as Minnesota, allows any citizen to bring a law suit to enforce the law. This law does not go that far. This bill would

contribute to the enforcement of the existing environmental law and any additional law the assembly should choose to enact.

*Hearing on H.B. 1059 Before the Judiciary Comm.*, 44th N.D. Legis. Sess. (Jan. 20, 1975) ("*ELEA Legislative History*") (testimony of Prof. Robert Beck, University of North Dakota School of Law).

[¶ 69] This reasoning is even more applicable to the waste of natural gas after N.D.C.C. § 38–08–06.4 was amended in 1993. The statute's language was changed from "[t]he industrial commission shall enforce this section and, for each well operator found to be in violation of this section, shall determine the value of flared gas for purposes of payment of gross production tax and royalties under this section and its determination is final" to discretionary language. Now the industrial commission "may" enforce this section. The legislative history indicates that, in part, these changes reflect the lack of resources available to comply with the mandatory language of the former statute. *See e.g. Hearing on S.B. 2342 Before the House Natural Resources Comm.*, 53rd N.D. Legis. Sess. (Feb. 26, 1993) ("SB 2342 allows the industrial commission to look at cases brought before them on an economical basis." "It's a bill that allows economics to come into play." "It gives the industrial commission more flexibility." "The impact of this bill means it would cut down on our workload."). Royalty owners, the state coffers, and the quality of our environment would all benefit from the additional enforcement resources the ELEA was intended to provide.

[¶ 70] The majority applies our traditional tests for an implied private cause of action under *Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc.*, 2001 ND 116, 628 N.W.2d 707, to section 38–08–06.4. I might agree with this approach if § 38–08–06.4 were the only applicable statute. It is not. Section 38–08–06.4, N.D.C.C., is the substantive environmental statute that Vogel asserts was violated. Chapter 32–40, the ELEA, is a separate statute designed to create a private right of enforcement. The legislature has clearly and unambiguously stated that it is a cumulative remedy. This Court ought not create roadblocks that were specifically eliminated by the legislature. By enacting the ELEA, the legislature intended for courts to determine whether our environmental laws have, in fact, been violated. "[A]ny person ... aggrieved by the violation of any environmental statute ... may bring an action in the appropriate district court ... to enforce such statute...." N.D.C.C. § 32–40–06.

[¶ 71] I dissent.

[¶ 72] CAROL RONNING KAPSNER